Robyn TODD, Petitioner,

v.

STATE of Alaska, Respondent.

Joseph HARVEY, Petitioner,

v.

STATE of Alaska, Respondent.

Nos. S–6709, S–6807.

Supreme Court of Alaska.

June 21, 1996.

G. Blair McCune, Assistant Public Defender, and John B. Salemi, Public Defender, Anchorage, for Petitioner Todd.

Mitchel J. Schapira, Anchorage, for Petitioner Harvey.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Respondent.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS and EASTAUGH, JJ.

## OPINION

As Revised on Rehearing

COMPTON, Chief Justice.

## I.  INTRODUCTION

Robyn Todd and Joseph Harvey seek review of the court of appeals' opinion affirming their convictions and corresponding sentences for both second-degree (felony) murder and first-degree robbery in connection with an armed robbery during which a man was killed. They assert that the Double Jeopardy Clauses of the United States and Alaska Constitutions bar conviction and punishment for both felony murder and the predicate felony. We affirm.

**1.**  The Fifth Amendment to the United States Constitution provides in part: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V. Through the Fourteenth Amendment, state prosecutions also are subject to the strictures of Fifth Amendment double jeopardy.  *Benton v. Mary-*

## II.  FACTS AND PROCEEDINGS

The underlying facts are not in dispute. Armed and wearing ski masks, Todd and Harvey entered a bar in downtown Anchorage early one morning while the bar's owner, Lloyd Dahl, and his employees, George Gillis and Nancy Lee Jourdan, were cleaning up and counting the evening's receipts.

While Todd guarded Gillis in the kitchen area at the back of the bar, Harvey went into the bar office where Dahl was counting the money.  Dahl tried to prevent Harvey from taking the money and was shot and killed. Jourdan heard the gunshot from outside the office.  She fled the bar and flagged down a passing community patrol van.  The police were alerted.  They confronted Todd and Harvey as the pair left the bar and apprehended them a short time later.

At a joint trial, Todd and Harvey were convicted of the first-degree robbery of Dahl, the second-degree (felony) murder of Dahl, the third-degree assault of Gillis, and Misconduct Involving Weapons in the First Degree.  Todd also was convicted of the third-degree assault on police officer Pam Nelson.

At sentencing, Harvey and Todd argued that the Double Jeopardy Clauses of the United States[1] and Alaska Constitutions[2] barred separate convictions for second-degree (felony) murder and the predicate offense of first-degree robbery.  The court disagreed.  Todd was sentenced to twenty years imprisonment for the second-degree murder charge, consecutive to twelve years imprisonment for the first-degree robbery charge. Harvey was sentenced to thirty years for the murder, consecutive to twelve years for the robbery.

On appeal, the court of appeals determined that the underlying felony "may be" a lesser-included offense of felony murder under Alaska law, *Todd v. State*, 884 P.2d 668, 686 (Alaska App.1994), but held that Todd's and Harvey's convictions and consecutive sen-

*land,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969).

**2.**  Alaska Const. art. I, § 9 provides: "No person shall be put in jeopardy twice for the same offense."

tences for felony murder and the predicate robbery were fully consistent with federal double jeopardy law and the Alaska Constitution as interpreted in *Whitton v. State,* 479 P.2d 302 (Alaska 1970). *Todd,* 884 P.2d at 682, 685–86. The court of appeals observed that its holding at least facially conflicted with *Tuckfield v. State,* 621 P.2d 1350 (Alaska 1981), in which this court observed that "double jeopardy is violated by conviction of both an offense and a lesser included offense, unless the convictions arise from separate conduct," and its own holding in *Hughes v. State,* 668 P.2d 842 (Alaska App.1983). *Todd,* 884 P.2d at 680–82. However, the court interpreted more recent Supreme Court decisions to supersede *Tuckfield*'s analysis and therefore declined to follow *Tuckfield* and overruled *Hughes. Todd,* 884 P.2d at 682, 686.

Todd and Harvey separately petitioned this court for review of the court of appeals' decision. Appellate Rule 302(a). We granted the petitions and consolidated the cases for review.

### III. *DISCUSSION*

#### A. *Standard of Review*

■ The issue before the court involves questions of constitutional law and statutory interpretation which we resolve by applying our independent judgment. *Arco Alaska, Inc. v. State,* 824 P.2d 708, 710 (Alaska 1992); *Norton v. Alcoholic Beverage Control Board,* 695 P.2d 1090, 1092 (Alaska 1985). Our duty is to adopt the rule of law which is most persuasive in light of precedent, reason and policy. *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

#### B. *Federal Double Jeopardy Law*

■ The Double Jeopardy Clause of the Fifth Amendment protects against multiple prosecutions and multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). As Todd and Harvey were convicted of all charges in a single proceeding, the only issue is whether their consecutive sentences impermissibly subject them to multiple punishments for the same

offense. *See Missouri v. Hunter,* 459 U.S. 359, 365–66, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983).

■ In *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Supreme Court laid out the test to determine whether the violation of two statutory provisions constitutes two offenses or only one. It is "whether each provision requires proof of an additional fact which the other does not." *Id.* The Supreme Court consistently has applied the *Blockburger* test for this limited purpose. *See Whalen v. United States,* 445 U.S. 684, 693–94, 100 S.Ct. 1432, 1439, 63 L.Ed.2d 715 (1980) (rape and felony murder where the rape was the predicate crime are the same offense under *Blockburger* ); *Brown v. Ohio,* 432 U.S. 161, 168, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977) (crimes of joyriding and auto theft are " 'the same statutory offense' within the meaning of the Double Jeopardy Clause"); *see also U.S. v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (test applied to determine whether conviction of criminal contempt of court barred subsequent prosecution for the offense which was the basis for the contempt prosecution); *Albernaz v. United States,* 450 U.S. 333, 338–39, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981) (consecutive sentences for conspiracy to import marijuana and conspiracy to distribute marijuana permissible because "although the objects of the conspiracies may partially overlap," *Blockburger* was satisfied by the fact that the statutes necessitated the proof of different, non-overlapping ends of the conspiracy).

Any indication the Court once may have given that *Blockburger* provided a unitary test for determining whether offenses were the same and whether the Double Jeopardy Clause was violated has since been disavowed. In a series of cases beginning with *Brown v. Ohio* and culminating with *Missouri v. Hunter,* the Supreme Court has stated that, at least in multiple punishment cases, the role of the Double Jeopardy Clause is limited to protecting a defendant against receiving more punishment than the legislature intended. *See Brown v. Ohio,* 432 U.S. at 165, 97 S.Ct. at 2225 ("Where consec-

utive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the ·same offense."); *Whalen v. U.S.*, 445 U.S. at 688, 100 S.Ct. at 1436 ("[T]he question whether punishments . . . are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized."); *Missouri v. Hunter*, 459 U.S. at 366, 103 S.Ct. at 678 ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."); *see also United States v. Halper*, 490 U.S. 435, 450, 109 S.Ct. 1892, 1902–03, 104 L.Ed.2d 487 (1989).[3]

■ In the later cases, the Supreme Court has employed the *Blockburger* test as a statutory interpretation screening tool to educe the intent of the legislature. *See Hunter*, 459 U.S. at 366–67, 103 S.Ct. at 678; *Albernaz*, 450 U.S. at 340, 101 S.Ct. at 1143; *Whalen*, 445 U.S. at 691, 693–95, 100 S.Ct. at 1437, 1438–39. If the statutes pass muster under the *Blockburger* test, cumulative punishment is presumptively allowable. *See Hunter*, 459 U.S. at 367, 103 S.Ct. at 678–79 ("[C]umulative punishment can presumptively be assessed after conviction for two offenses that are not the 'same' under *Blockburger*."). If they fail it, cumulative punishment is presumptively barred. *See Whalen*, 445 U.S. at 691–92, 100 S.Ct. at 1437–38 ("The assumption underlying the rule [of statutory construction from *Blockburger*] is that Congress ordinarily does not intend to punish the same offense under two different statutes."). The presumption against multiple punishment is, however, rebuttable. Thus, the analysis continues with a determination of whether the legislature

---

**3.** Petitioners assert that this area of law has come full circle: the Supreme Court overruled *Hunter* and its antecedents in *Dixon*, and returned to a unitary test, based on *Blockburger*, for determining whether two offenses are the same offense for double jeopardy purposes, and whether the total punishment imposed for multiple offenses violates double jeopardy. As evidence of this, they point to two sentences from *Dixon* in which Justice Scalia writes for the Court:

> In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test the double jeopardy bar applies. . . . The same-elements test, sometimes referred to as the *"Blockburger"* test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offense" and double jeopardy bars additional punishment and successive prosecution.

*U.S. v. Dixon*, 509 U.S. at ――, 113 S.Ct. at 2856 (citing *Brown v. Ohio*, 432 U.S. at 168–69, 97 S.Ct. at 2226–27).

The State asserts that Petitioners have taken the quoted passage out of context and that, in the context of the *Dixon* opinions, it is clear that the passage does not stand for the broad principle Petitioners espouse:

> Todd . . . attempts to inflate this sentence from *Dixon* [quoted above] as establishing *Blockburger* as a conclusive test to be used in *all* double jeopardy cases. *Dixon*, however involved only the successive prosecution element of the Double Jeopardy Clause; it presented no multiple punishment issue. . . . Viewed in this light, the

statement Todd relies upon is nothing more than one of historical fact, *i.e.* the Court has applied *Blockburger* in both multiple punishment and successive prosecution cases. . . . If Todd's interpretation is correct, then *Dixon*, in effect, overruled [the *Whalen–Albernaz–Hunter* line of cases] *sub silentio*.

Respondent's Brief at 14–15 (emphasis in original).

The State offers the more plausible reading of *Dixon*. Considering the lengths to which the Court went to justify overruling *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), in which the Court held that the Double Jeopardy Clause barred a subsequent prosecution if that prosecution required the government to prove conduct that constituted an offense for which the defendant already had been prosecuted, *see Dixon*, 509 U.S. at ―― ――, 113 S.Ct. at 2859–64, Petitioners' contention that the Court overruled the *Whalen–Albernaz–Hunter* line of cases without comment is not persuasive. Moreover, as the State points out, Justice Scalia, the author of the passage on which Petitioners' argument hinges, in a later case implicitly acknowledged that the double jeopardy prohibition against multiple punishments was not coextensive with the *Blockburger* test:

> Thus, in the context of criminal proceedings, legislatively authorized multiple punishments are permissible if imposed in a single proceeding, but impermissible if imposed in successive proceedings.

*Dep't of Revenue of Montana v. Kurth Ranch*, ―― U.S. ――, ―― n. 1, 114 S.Ct. 1937, 1957 n. 1, 128 L.Ed.2d 767 (1994) (Scalia, J., dissenting) (citing *Hunter*, 459 U.S. at 368–69, 103 S.Ct. at 679).

intended to allow multiple punishments for those offenses that fail the *Blockburger* test. *See Garrett v. United States,* 471 U.S. 773, 779, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985) ("We have recently indicated that the *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history."); *Albernaz,* 450 U.S. at 340, 344, 101 S.Ct. at 1143, 1145 ("[T]he [*Blockburger*] rule should not be controlling where ... there is a clear indication of contrary legislative intent."; "Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution."); *Whalen,* 445 U.S. at 692, 100 S.Ct. at 1438 ("[W]here two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent.").

On the basis of our examination of the language and legislative history of the felony-murder statute, AS 11.41.110(a)(3), we conclude that the legislature intended to allow multiple punishments for felony murder and the predicate offense of robbery.[4]

The drafters' commentary to AS 11.41.110(a)(3) is the first source of evidence that the legislature intended to allow multiple punishments:

> In considering the Revised Code's approach to the felony murder statute, it must be recalled that the purpose of a felony murder rule is to deter all killings during the commission of felonies which involve a high potential for violence. By holding the felon liable for an unintended and even accidental death occurring in the course of or in furtherance of a felony, the rule provides a powerful incentive not to commit inherently dangerous crimes, or at the very least to plan and carry out such

crimes with increased regard for physical dangers.

> For all practical purposes, Alaska does not now have a felony murder rule.... Consequently, an accidental killing occurring during the commission of an enumerated felony does not render the actor guilty of felony murder under the existing statute.

> Subsection (a)(3) [the felony murder provision] specifically eliminates the *Gray* requirement that a felon "purposely" kill during the commission of an enumerated felony.

*Alaska Criminal Code Revision, Tentative Draft,* Part 1, pp. 27–29, *quoted in Todd,* 884 P.2d at 683. Under Alaska law prior to the 1980 revision, an actor who unintentionally caused a death during the course of a felony was subject to prosecution for the felony and for manslaughter. *See Gray v. State,* 463 P.2d 897, 906 (Alaska 1970) (no felony-murder provision under Alaska law; absent an intent to kill, only conviction for manslaughter is permissible); *see also Keith v. State,* 612 P.2d 977, 987–88 (Alaska 1980) (describing *Gray* as establishing a "felony-manslaughter rule"); *Jacinth v. State,* 593 P.2d 263 (Alaska 1979) (upholding convictions for arson and manslaughter for death caused by fire). The commentary to the rule makes clear the legislature's intent to make the penalty for killings caused during felonies more severe than under the then-existing felony-manslaughter rule. This can be accomplished predictably only by allowing multiple punishments for felony murder and the underlying felony. Absent multiple punishment, the defendant such as Jacinth, convicted of both manslaughter and the accompanying felony, may face a greater sentence than a defendant convicted under the ostensibly more severe felony-murder statute. *Compare* AS 12.55.125(b) (sentence for felony

4. The sequence of the analysis is not important; a court should derive the same result whether it applies the *Blockburger* test and then examines legislative intent or first looks to legislative intent in the hope of obviating the need for further analysis. *See Hunter,* 459 U.S. at 368–69, 103 S.Ct. at 679 ("Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under

*Blockburger,* a court's task of statutory construction is at an end...."). Because we conclude that the legislature's intent is clear, we need not determine whether the Alaska felony-murder and robbery statutes are the "same" under *Blockburger.* We note, however, that the Supreme Court's holding in *Whalen*—that the District of Columbia's rape and felony murder offenses are the same offense under *Blockburger*—suggests they are.

murder at least five years but not more than 99 years) *with* AS 12.55.025(e)–(h) and AS 12.55.125(c) (sentence for each class A felony carries term of up to 20 years, with a presumptive term of five years for each, sentences to run consecutively). Moreover, as the court of appeals observed, "[n]othing in the legislative history of Alaska's felony-murder statute, and nothing in any subsequent legislation, indicates legislative dissatisfaction with the result in *Jacinth*—the Alaska Supreme Court's decision that a single criminal act (arson) will support separate convictions for both the felony and a resulting homicide." *Todd,* 884 P.2d at 684.

Further evidence of the legislature's intent to allow cumulative punishment is found in the limited exception to the felony-murder statute for a burglary with murder as its object. AS 11.41.115(c) provides:

> A person may not be convicted of murder in the second degree under AS 11.41.110(a)(3) [the felony-murder statute] if the only underlying crime is burglary, the sole purpose of the burglary is a criminal homicide, and the person killed is the intended victim of the defendant. However, if the defendant causes the death of any other person, the defendant may be convicted of murder in the second degree under AS 11.41.110(a)(3). Nothing in this subsection precludes a prosecution for or conviction of murder in the first degree or murder in the second degree under AS 11.41.110(a)(1) or (2) or of any other crime, including manslaughter or burglary.

The commentary to this subsection provides:

> Subsection (c) was referred to at the Criminal Law Subcommission meetings as the "felony-murder merger doctrine." In considering this extremely limited exemption from the felony-murder rule, it must be recalled that the purpose of the rule is to diminish the risk of unintentional or even accidental killings during the commission of violent felonies. One of these felonies, burglary in the first degree, occurs when a person enters a dwelling with intent to commit a crime. If a person commits burglary in the first degree by breaking into a house with intent to kill the occupant, the felony-murder rule would

have no deterrent effect. Permitting a conviction for murder under the felony-murder rule in this circumstance would also have the effect of preventing the jury from considering whether the defendant acted in the "heat of passion."

> The Code does not permit a conviction for felony-murder in this situation; the felony is said to "merge" with the homicide. Of course, the defendant can still be charged with first or second degree murder for the intentional killing. The effect of the felony-murder merger doctrine is to prohibit a second-degree murder conviction solely on proof that the defendant committed first degree burglary by entering a dwelling with intent to kill the occupant.

1978 Senate Journal 1399, Supp. No. 47 (June 12), p. 12, *quoted in Todd,* 884 P.2d at 684–85. On the basis of this language, the court of appeals concluded that, "because the legislature enacted a special provision to merge the two potential offenses in this specific situation, the legislature must have intended that defendants in other felony-murder situations would be subject to conviction and punishment for the homicide and the underlying felony." *Todd,* 884 P.2d at 685–86. We agree with that conclusion.

Our conclusion that the legislature intended to allow multiple punishments is also based upon the distinct nature of the interests protected by the felony-murder and robbery statutes.

> Specifically, upon reviewing the statutory scheme devised by our legislature, we believe that it sought to protect against two separate societal interests when it enacted the felony murder statute and the robbery statute. In essence, the robbery statute is intended to protect against robbery only, while the felony murder statute seeks to protect against homicides. In light of this intent to protect against two separate evils, we must conclude that the legislature intended two separate punishments when a defendant violates both statutes.

*Talancon v. State,* 102 Nev. 294, 721 P.2d 764, 768 (1986). *See also State v. Greco,* 216 Conn. 282, 579 A.2d 84, 90–91 (1990); *State v. Blackburn,* 694 S.W.2d 934, 937 (Tenn.1985).

It is true, as Todd and Harvey point out, that both the robbery and the homicide provisions are contained in Chapter 41 of the criminal code, "Offenses Against the Person." However, contrary to Todd's and Harvey's contention, this fact does not lead to the "inescapable" conclusions that the societal interests sought to be protected are "virtually identical" and that the legislature did not intend to allow multiple punishments. An examination of some of the other offenses in Chapter 41 reveals the speciousness of their argument. Sexual assault crimes are included along with robbery and related offenses in Chapter 41. Yet, it cannot be argued seriously that AS 11.41.434, Sexual Abuse of a Minor in the First Degree, and AS 11.41.520, Extortion, protect "virtually identical" societal interests.

■ For the foregoing reasons, we conclude that the Alaska legislature intended to authorize separate convictions and cumulative punishments for felony murder and the predicate felony of robbery. We hold that the Double Jeopardy Clause of the Fifth Amendment does not bar Todd's and Harvey's consecutive sentences.

### C. *Alaska Double Jeopardy Law*

■ Alaska has its own constitutional provision relating to double jeopardy. *See* note 2, *supra.* This court is free to interpret the state constitutional provision as it sees fit, so long as the interpretation does not undermine the minimum protections established by the United States Supreme Court in decisions interpreting the federal constitution. *Whitton v. State,* 479 P.2d at 309.

■ *Whitton* is the seminal case and still controlling precedent in this area of law. In *Whitton,* this court held the Double Jeopardy Clause of the Alaska Constitution barred multiple punishments for "one or 'the same' offense." *Id.* at 310. After considering and rejecting the *Blockburger* and other tests, *id.* at 310, this court developed its own test for determining whether several statutory violations constitute the same offense for double jeopardy purposes:

The trial judge first would compare the different statutes in question, as they ap-

ply to the facts of the case, to determine whether there were involved differences in intent or conduct. He would then judge any such differences he found in light of the basic interests of society to be vindicated or protected, and decide whether those differences were substantial or significant enough to warrant multiple punishments....

If such differences in intent or conduct are significant or substantial in relation to the social interests involved, multiple sentences may be imposed, and the constitutional prohibition against double jeopardy will not be violated. But if there are no such differences, or if they are insignificant or insubstantial, then only one sentence may be imposed under double jeopardy. *Id.* at 312.

■ Applying the *Whitton* test, we conclude that felony murder and robbery are not the same offense for double jeopardy purposes; therefore, Petitioners' consecutive sentences are allowable. The statutes differ significantly in the intent and conduct required; the most obvious difference is the requirement under the felony-murder statute that someone have been killed. Moreover, as we discussed above, the statutes also protect different societal interests. The felony-murder statute protects against the loss of human life. "In contrast, the basic rationale of the robbery statutes is protection against the terror of the forcible taking." *Greco,* 579 A.2d at 91 (internal quotations omitted); *see also Jacinth,* 593 P.2d at 267 ("Here the separate statutory offenses to be considered are those of second degree arson and manslaughter. Since the former protects a property interest and the latter the paramount personal interest of protection of human life, we hold that they should be considered separate offenses under the *Whitton* test.").

■ The legal concept of greater and lesser-included offenses is "related to, but distinguishable from, the question considered in *Whitton* ... concerning when separate punishment may be imposed for separate statutory offenses arising out of the same conduct." *Tuckfield v. State,* 621 P.2d at 1352. Tuckfield was convicted of rape and assault with intent to rape in connection with one

criminal episode and appealed the rape conviction on evidentiary grounds. *Id.* at 1352. This court affirmed the rape conviction, but concluded that rape and assault with intent to rape stood in the relationship of greater and lesser-included offenses and that the double jeopardy clause barred conviction of both. *Id.*

We believe that robbery, although a predicate felony for felony murder, is not a lesser-included offense of felony murder, and we therefore conclude that *Tuckfield* is inapplicable in the present context.

In our view, the offenses encompass different constituent elements. *See Christie v. State,* 580 P.2d 310, 317 (Alaska 1978) ("[T]he included offense must be less than the charged offense in terms of its constituent elements."). Murder, unlike robbery, has as an element that someone have been killed; robbery, unlike murder, has as an element the taking or attempted taking of property. This view has been adopted by the highest court of at least one state. *See State v. Gonzales,* 245 Kan. 691, 783 P.2d 1239, 1249 (1989) ("Clearly, the elements of rape are not included in the elements of murder ... the defendant was properly convicted of both attempted rape and felony murder.").

However, because a defendant cannot be convicted of felony murder with robbery as a predicate without having been convicted of robbery, robbery would appear to be a lesser-included offense of felony murder under the formulation that "to be necessarily included in the greater offense, the lesser must be such that it is impossible to commit the greater without first having committed the lesser." *Christie,* 580 P.2d at 317 (quoting *Giles v. United States,* 144 F.2d 860, 861 (9th Cir.1944)).

That formulation notwithstanding, we view felony murder as a distinct area of the criminal law not governed by traditional lesser-included offense analysis. *See Gonzales,* 245 Kan. 691, 783 P.2d at 1248 ("The

flaw in defendant's argument [that convictions for both felony murder and the predicate felony are barred because greater and lesser-included offenses] is that he fails to recognize the distinction between the 'lesser included offense' doctrine and the 'felony-murder' doctrine. Each is a separate theory of law."). Traditional lesser-included offense analysis involves examining offenses with overlapping elements and normally arises in two contexts: where a defendant has been convicted of separate statutory offenses for the same conduct and it is not clear whether the legislature intended the defendant be punished under both statutory provisions, and where a defendant's conduct possibly constitutes several offenses of varying seriousness and the defendant seeks (or seeks to avoid on an "all or nothing" trial strategy) a lesser-included instruction. *See, e.g., Tuckfield,* 621 P.2d at 1352 (convictions for rape and lesser-included offense of assault with intent to rape impermissible); *Elisovsky v. State,* 592 P.2d 1221 (Alaska 1979) (defendant charged with assault with a dangerous weapon (a gun) entitled to instruction on lesser-included offense of careless use of a firearm). The felony-murder provision does not overlap with other offenses but rather enhances them, and, as we noted above, the intent of the legislature to allow multiple punishments is clear. *See State v. McCovey,* 803 P.2d 1234, 1237–39 (Utah 1990) ("Despite the fact that under the [same-elements] analysis aggravated robbery would be a lesser included offense of felony murder, we recognize that enhancement statutes are different in nature than other criminal statutes."; "A true lesser included relationship does not exist in the felony murder statute...."). Because we conclude that the predicate felony of robbery is not a lesser-included offense of felony murder, our decision today does not affect the conclusion reached in *Tuckfield* that conviction of both a greater and lesser-included offense is barred by double jeopardy.[5] We disavow any suggestion in the court of ap-

---

**5.** The validity of the distinction we draw today between felony murder and traditional lesser-included analysis is further evidenced by the fact that the situation in which a defendant is convicted of felony murder and also a felony which would be a lesser-included offense of homicide under traditional lesser-included analysis is never likely to arise. This is so because Alaska's felony-murder statute does not include assault among the predicate felonies. *See* AS 11.41.110(a)(3).

peals' opinion that *Tuckfield* is mistaken and should be overruled. *See Todd,* 884 P.2d at 681–82 (describing *Tuckfield* as "erroneous").

### D. *The Assault Conviction*

Petitioners also assert that their convictions for assault in the third degree against George Gillis should be merged into the felony-murder conviction. This argument is without merit. This court has held that a single assaultive act constitutes a separately-punishable assault for each victim, *Cooper v. State,* 595 P.2d 648 (Alaska 1979), and that the robbery of each of several victims constitutes a separate and distinct criminal offense, *Davenport v. State,* 543 P.2d 1204, 1209 (Alaska 1975) ("an intent to harm multiple victims will lift the veil of protection which the double jeopardy doctrine might otherwise afford to a defendant"). Petitioners' convictions for the assault on one victim and the robbery of a second victim are entirely consistent with the principles of double jeopardy and the precedent of this court.

## IV. *CONCLUSION*

Petitioners' consecutive sentences for felony murder and the predicate felony of first-degree robbery do not violate the Double Jeopardy Clauses of the United States and Alaska Constitutions.

AFFIRMED.

MOORE, J., not participating.