Christopher E. CRONCE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9855.

Court of Appeals of Alaska.

Sept. 25, 2009.

Brian T. Duffy, Assistant Public Advocate, and Joshua Fink, Public Advocate, Anchorage, for the Appellant.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

BOLGER, Judge.

Christopher E. Cronce was convicted of assault in the second degree [1] and assault in the third degree [2] based on an incident when he attacked a man named Michael Wims. Superior Court Judge John E. Suddock imposed separate convictions and sentences for these two offenses. We conclude that these separate statutory violations must merge because, under the facts of this case, there was no difference in conduct or intent sufficient to warrant multiple punishments. We there-

16. In view of this disposition, we do not address the other issues that Cofey raises in this appeal.

1. AS 11.41.210(a)(1)-(3).

2. AS 11.41.220(a)(1)(A).

fore vacate the separate conviction for third-degree assault.

## Background

Cronce confronted Michael Wims as Wims walked out of the Casino Bar in Kenai. The men exchanged words and Cronce head-butted Wims in the face. Wims tried to escape by running across the parking lot and climbing a nearby fence, but Cronce dragged Wims back to the ground and started to beat him and kick him. Cronce continued to beat Wims as he lay helplessly on the ground until Kenai Police Officer James Johnson arrived in response to a 911 call.

Cronce was charged with one count of second-degree assault and one count of third-degree assault.[3] At trial, Cronce testified that the initial altercation with Wims was mutual and that he pursued Wims through the parking lot simply to talk about what happened. As they approached the fence, the argument continued and again escalated into a fight.

During closing arguments, the prosecutor explained to the jury that the State's theory of the case was based on both the initial assault against Wims in the parking lot and what occurred after Cronce chased him down—that is, even if the initial head-butting involved mutual combat, Cronce was still guilty because he chased Wims down and continued to beat him.

During deliberations, the jury sent a note to the judge asking if they should deliberate on the third-degree assault charge after they had reached a decision on the second-degree assault charge. In the process of discussing this note with the attorneys, the judge suggested that there might be a double jeopardy issue as to the merger of these counts. The judge then responded to the jury's question by instructing them to deliberate on both

counts. The jury eventually reached a verdict of guilty on both counts.

At sentencing, the judge reconsidered his earlier opinion that Cronce's assault convictions should be merged. The judge concluded that the third-degree assault occurred when Cronce chased Wims through the parking lot, and the second-degree assault occurred when Cronce began to physically beat him. Based on this reasoning, the judge imposed separate convictions and sentences for the two charges: 3 years' imprisonment with 2 years suspended for second-degree assault, and 24 months' imprisonment with 23 months suspended for third-degree assault, to be served consecutively.

Cronce now appeals.

## Discussion

In *Whitton v. State*,[4] the Alaska Supreme Court established a test to determine whether the violation of two different criminal statutes during a single criminal event should be treated as a single punishable offense under the double jeopardy clause of the Alaska Constitution:

The trial judge first would compare the different statutes in question, as they apply to the facts of the case, to determine whether there were involved differences in intent or conduct. He would then judge any such differences he found in light of the basic interests of society to be vindicated or protected, and decide whether those differences were substantial or significant enough to warrant multiple punishments....

If such differences in intent or conduct are significant or substantial in relation to the social interests involved, multiple sentences may be imposed, and the constitu-

**3.** Count I of the indictment charged:
Randall S. Cronce and Christopher E. Cronce with intent to cause physical injury to Michael Wims, caused physical injury to Michael Wims by means of a dangerous instrument, to-wit: hands, arms, and/or feet; and/or Randall S. Cronce and Christopher E. Cronce recklessly cause serious physical injury to Michael Wims; and/or Randall S. Cronce and Christopher E. Cronce recklessly caused serious physical inju-

ry to Michael Wims by repeated assaults, even if each assault individually did not cause serious physical injury.
Count II of the indictment charged that "Randall S. Cronce and Christopher E. Cronce recklessly placed Michael Wims in fear of imminent serious physical injury by means of a dangerous instrument, to-wit: hands, arms and/or feet."

**4.** 479 P.2d 302 (Alaska 1970).

tional prohibition against double jeopardy will not be violated.[5]

To apply this test, we first analyze whether the two statutory offenses as applied to the evidence in this case involved differences in conduct or intent. Whether two offenses qualify as a single offense for double jeopardy purposes under *Whitton* is an issue of law, which we review anew, independently of the trial court's decision.[6]

We have previously approved separate convictions for assaults where there were clear breaks in time and circumstances between the offenses.[7] But when the record is ambiguous as to whether the defendant has committed one offense or two, then the defendant should receive only a single conviction and sentence.[8] Accordingly, in an ambiguous case, we may be required to conclude that separate convictions are forbidden, even after the trial judge concludes that the crimes involve separate conduct.[9]

This is a case where the record is ambiguous. There is nothing in the indictment to suggest that there were substantial differences in the conduct charged for each offense. Likewise, the jury instructions merely simplified the language of the indictment without suggesting that the separate counts were based on different conduct.

The instruction on Count I required the jury to find that "Christopher E. Cronce, with intent to cause physical injury to Michael Wims, caused physical injury to Michael Wims," and the instruction on Count II required the jury to find that "Christopher E. Cronce recklessly placed Michael Wims in fear of imminent serious physical injury." The jury instructions for both counts, however, required the jury to find that Cronce committed these offenses "by means of a dangerous instrument, to-wit: hands, arms, and/or feet."

Similarly, the final arguments of counsel did not draw any clear distinctions between the conduct the prosecution relied on to establish these separate counts. In other words, both the prosecutor's argument and the jury instructions left open the possibility that the jury could reach a guilty verdict on the third-degree assault charge based on conduct supporting the guilty verdict on the second-degree assault charge.[10]

And at the sentencing hearing, while opposing Cronce's request for certain mitigating factors, the prosecutor suggested that the same evidence supported both offenses:

> Mr. Wims fled as quickly as he could to get away from [Cronce], and he chased him down and savagely beat him. The beating that occurred after the fact, the punching and kicking, the facial injuries that Mr. Wims received in the parking lot behind the other building away from the bar parking lot, after any allegation of a perceived threat or a swing by Mr. Wims, it's that conduct that we're really talking about.

The judge then interrupted with a question: "As to both charges?" And the prosecutor confirmed that the same evidence supported both charges:

> As to both charges, Your Honor. *The fear assault is his feelings of fear that he experienced,* which is the assault three, that he experienced *as this man was beating him—kicking him and beating him,* his fear of imminent serious physical injury or death.

This response suggests that the prosecutor believed that Cronce's conduct establishing the fear assault charged in Count II was the same conduct that established the injury assault charged in Count I.

---

5. *Id.* at 312.

6. *Erickson v. State,* 950 P.2d 580, 585 (Alaska App.1997).

7. *See, e.g., Williams v. State,* 928 P.2d 600, 604 (Alaska App.1996).

8. *Atkinson v. State,* 869 P.2d 486, 495–96 (Alaska App.1994); *Horton v. State,* 758 P.2d 628, 632 (Alaska App.1988) (noting that the State has the burden of proving each offense beyond a reasonable doubt); *see also Mill v. State,* 585 P.2d 546, 552 n. 4 (Alaska 1978) ("In marginal cases doubt should be resolved against turning a single transaction into multiple offenses").

9. *See Moore v. State,* 123 P.3d 1081, 1092–93 (Alaska App.2005).

10. *See State v. McDonald,* 872 P.2d 627, 660 (Alaska App.1994).

Later in the hearing, the judge acknowledged that the prosecutor's opinion would "wipe out" the offense charged in Count II. But the judge declined to merge the sentences on the two convictions based on his alternative interpretation of the trial evidence:

> [Y]ou can make an argument ... that perhaps under our law the two offenses merge, but as I view it, the assault started during the chase down the road, and that was the fear-based [assault]—nothing in this whole deal was scarier than running down that road with two jackals after you knowing what was going to happen as soon as they caught you, and I think that's a distinct enough interest to justify the court imposing a second sentence for the class C offense.

The judge's conclusion on this issue seems questionable considering the way the jury instructions applied to the evidence presented at trial. For the third-degree assault count, the jury was instructed to determine whether Cronce used his "hands, arms, and/or feet" to frighten Wims. But Cronce did not begin to strike Wims with his "hands, arms, and/or feet" as dangerous instruments until after he chased Wims down and pulled him off the fence. There was little evidence that Cronce intended to use his hands, arms, and feet as dangerous instruments when he chased Wims across the parking lot.[11]

Taking this jury instruction into account, it seems more likely that the jury convicted Cronce for third-degree assault based on fear he induced when he began beating Wims with his hands, arms, and feet—exactly the same theory that the prosecutor advanced at the sentencing hearing. Under this theory, the intent and conduct that the prosecution relied on to establish the third-degree assault charge is entirely subsumed by the intent and conduct that established the second-degree assault charge.[12] In any event, the weakness in the judge's alternative theory for the third-degree assault charge convinces us that these circumstances were too ambiguous to support two separate convictions.

We next analyze the societal interests involved to determine whether the differences between these two crimes merit separate punishment. The State argues that the second-degree assault statute protects against violent physical injury and that the third-degree assault statute protects against being placed in fear of being subject as to serious physical injury. We conclude that these asserted interests are very similar and that both involve the identical goal of protecting the physical safety of individual citizens.

This conclusion is implicit in a previous decision where we considered convictions for an injury assault and a fear assault involving the same incident. In *Soundara v. State*,[13] the defendant was convicted of two charges of third-degree assault: one charge for recklessly causing physical injury to the victim by means of a dangerous instrument, and a second charge for recklessly placing the victim in fear of imminent serious physical injury by means of a dangerous instrument.[14] We concluded that the two convictions should merge because the jury was not instructed to determine whether the two convictions were based on a single underlying act or two separate acts.[15]

In the present case, we likewise cannot ascertain any significant difference between the intent and conduct required for Cronce's two assault convictions. And the societal interests involved appear to be nearly identical. We therefore conclude that only one conviction may be imposed for these two statutory violations.

11. *Cf. Konrad v. State,* 763 P.2d 1369, 1374–76 (Alaska App.1988) (noting that the defendant's use of his hands to strike the victim on the head and ribs was not sufficient to support a finding that he employed his hands as a dangerous instrument).

12. *See Whitton,* 479 P.2d at 314 ("Since the more serious offense already proscribes and punishes the activity of the less serious offense, the differences between the two offenses must be deemed insubstantial or insignificant in relation to the social interests involved").

13. 107 P.3d 290 (Alaska App.2005).

14. *Id.* at 299.

15. *Id.*

## Conclusion

We VACATE the separate judgment of conviction on Count II. The superior court must enter one merged conviction for second-degree assault.[16] On remand, the court may reconsider the sentence for this merged conviction as long as the sentence does not exceed the composite sentence imposed for both counts at the original sentencing hearing.[17]

MANNHEIMER, Judge, concurring.

I agree with my colleagues that Cronce could not properly be convicted of both second- and third-degree assault under the facts of this case. I write separately because my analysis of the case is a little different from the analysis presented in the lead opinion.

In answering the question of whether Cronce could properly receive separate convictions for second-degree assault and third-degree assault, my colleagues apply a constitutional analysis: they conclude that separate convictions are barred by the double jeopardy clause of the Alaska Constitution as construed by our supreme court in *Whitton v. State*, 479 P.2d 302 (Alaska 1970). I do not believe that a constitutional analysis is required. Rather, the question is one of substantive criminal law—an issue of statutory interpretation and legislative intent.

The double jeopardy doctrine announced in *Whitton*—the doctrine that our constitution authorizes the judiciary to make policy decisions about how many separate convictions are allowed in a given situation—has been undercut by more recent decisions of the United States Supreme Court and the Alaska Supreme Court. As the United States Supreme Court declared in *Missouri v. Hunter*, when the question is whether a defendant may lawfully be subjected to multiple punishments for a single criminal act or a single course of criminal conduct, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing more punishment than the legislature intended".[1]

The Alaska Supreme Court acknowledged this principle of federal double jeopardy law in *Todd v. State*, 917 P.2d 674, 677–78 (Alaska 1996), a case that raised the issue of whether separate punishments can lawfully be imposed for both the offense of felony murder and the *underlying* felony.

It is true that, after our supreme court acknowledged the rule announced in *Missouri v. Hunter*, the supreme court then separately analyzed the double jeopardy issue under the *Whitton* rule (*see Todd*, 917 P.2d at 681–83)—thus implying that the *Whitton* analysis requires Alaska courts to consider something other than legislative intent when resolving an issue of double punishment. But a careful reading of the supreme court's opinion—in particular, the section in which the court analyzed the double jeopardy issue under *Whitton*—reveals that the court resolved the issue in exactly the same way that federal courts would resolve it under *Missouri v. Hunter*. That is, the supreme court looked to the Alaska Legislature's intent.

The supreme court couched its decision as a ruling that, when a defendant is charged with felony murder, the defendant's underlying felony is not a lesser included offense of the murder charge. *Todd*, 917 P.2d at 682. However, the court openly acknowledged that, under Alaska's test for greater and lesser included offenses, these two offenses do indeed stand in the relationship of greater offense and lesser included offense. *Id.* The supreme court then declared that, notwithstanding this fact, "felony murder [is] a distinct area of the criminal law [that is] not governed by [the] traditional lesser-included[-]offense analysis". *Id.*

How did the court explain this conclusion? The court declared that "[the] lesser-included offense analysis [applies to] offenses with overlapping elements ... [where] it is not clear whether the legislature intended [that] the defendant be punished under both statut[es]...." *Id.* And, in the case of the felo-

---

**16.** *See Hurd v. State*, 107 P.3d 314, 322 (Alaska App.2005).

**17.** *See Allain v. State*, 810 P.2d 1019, 1021 (Alaska App.1991).

**1.** 459 U.S. 359, 365–66, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983).

ny-murder statute, "the intent of the legislature to allow multiple punishments is clear." *Id.*

In other words, the *Whitton* analysis that the supreme court applied in *Todd* hinged on legislative intent—the same test that federal courts employ under *Missouri v. Hunter.*

Based on *Hunter* and *Todd,* I believe that the primary question to be asked in the present case is this: In circumstances where a defendant approaches a victim in a threatening manner, the victim perceives the threat, and then the defendant carries out the threat by attacking the victim and inflicting injury, did the Alaska Legislature intend to permit the State to convict the defendant of separate counts of assault—one conviction for the threatening conduct that immediately preceded the physical assault, and the other conviction for the physical assault itself?

Allowing two convictions in this situation is not a traditional approach. Normally, if the physical attack is actually launched (*i.e.,* if the defendant moves beyond threatening conduct), the immediately preceding threat is seen as merely a preliminary step in the attack, and separate convictions are not imposed.

For example, in *Tuckfield v. State,* 621 P.2d 1350, 1352 (Alaska 1981), the supreme court held that a defendant could not be separately convicted of both an assault with intent to commit rape and the completed rape arising from the same assault. Although the supreme court portrayed its decision as an application of the double jeopardy rule announced in *Whitton,* the decision in *Tuckfield* appears to be a straightforward application of the rule now codified in AS 11.31.140(c)—the rule that "[a] person may not be convicted on the basis of the same course of conduct of both [an attempt and] the crime that is the object of the attempt".

This Court reached the same result in *Tookak v. State,* 648 P.2d 1018, 1023 (Alaska App.1982), where we concluded that the defendant could not be convicted of both assault with intent to commit rape and the completed rape when the assault and the completed rape were merely separate stages of one continuous assault culminating in the rape of the victim.

The State argues that allowing two convictions in Cronce's case (and other analogous cases) makes sense because the two convictions would reflect a vindication of separate societal values: first, that a person should be free from fear; and second, that a person should not be injured.

It is true that one might draw a distinction between the two stages of the assault in this case: the first stage being the instilling of fear during the chase, the second stage being the successful capture of the victim and the completion of the attack. Conceivably, the legislature might wish to divide these two stages of the continuous assaultive act into separate offenses, as the State now proposes. It is also conceivable that any such legislation would raise constitutional issues. But for now, the question is one of legislative intent: whether, under our current assault statutes, the Alaska Legislature has already authorized separate convictions for the two stages of a continuous act of assault like the one in this case.

As I noted earlier, allowing two convictions in situations like this is not a normal or typical resolution of the matter. The State is essentially arguing that anyone who physically attacks another person will commit two separately punishable assaults if the victim perceives (no matter how fleetingly) that the attack is coming. There is nothing in the legislative commentary to Alaska's assault statutes (AS 11.41.200–230) suggesting that the legislature intended to adopt this non-traditional approach.

Accordingly, I conclude that, in situations like the one presented here, defendants can not be separately convicted and punished for (1) instilling fear in their victims by threatening to attack them, and then (2) completing the attack. I reach this conclusion as a matter of statutory interpretation and substantive criminal law, rather than under a double jeopardy analysis.