Leonard P. **HURD,** Appellant,

v.

**STATE of Alaska,** Appellee.

No. A–8112.

Court of Appeals of Alaska.

Feb. 11, 2005.

---

**25.** *See* AS 12.55.025(i); *Brakes v. State,* 796 P.2d 1368, 1372 (Alaska App.1990).

316

Robert M. Herz, Anchorage, for the Appellant.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

This case presents two significant issues. The first issue concerns the double jeopardy doctrine announced by our supreme court in *Whitton v. State,* 479 P.2d 302 (Alaska 1970). In *Whitton,* the supreme court held that even though a jury has found a defendant guilty of violating two separate criminal statutes, the sentencing court should impose only one conviction and sentence if the two statutory offenses are so closely related that there are no significant differences between them as to the conduct proscribed and the societal values protected.[1]

The present appeal requires us to clarify the legal effect of a sentencing judge's ruling that, under *Whitton,* one count against a defendant should be merged or dismissed because it is duplicative of another count for which the defendant will be convicted and sentenced. We hold that if a defendant pursues an appeal and succeeds in obtaining reversal of the count on which they were sentenced, but if the defendant does not attack the validity of the other count that was merged or dismissed on *Whitton* grounds, then the sentencing court is authorized to enter judgement and impose sentence on the remaining count that was previously merged or dismissed as duplicative (unless the defendant affirmatively shows that, for some reason, entry of judgement on the remaining count would be demonstrably unfair).

The second issue presented in this appeal concerns the legal doctrine that requires litigants to present all of their claims in a single legal proceeding, rather than litigating these claims piecemeal in different proceedings.

The defendant in this case, Leonard P. Hurd, was convicted of kidnapping and third-degree assault (in the sense that the jury found him guilty of both crimes), but the sentencing judge dismissed the assault charge as duplicative of the kidnapping charge under *Whitton.* Hurd then pursued an appeal to this court. In that previous appeal, Hurd attacked his kidnapping verdict on two grounds (insufficient evidence, and faulty jury instructions on the elements of kidnapping), but Hurd did not attack the third-degree assault verdict.

In that previous appeal, we concluded that the jury had not been properly instructed on the elements of kidnapping, and we therefore reversed Hurd's kidnapping conviction. When Hurd's case returned to the superior court, the State announced that it did not intend to pursue the kidnapping charge any further. Instead, the State asked the superior court to enter judgement against Hurd on the third-degree assault charge (the charge that had earlier been dismissed under *Whitton* as duplicative of the kidnapping charge). The superior court did this, and Hurd is now pursuing a second appeal.

In this second appeal, Hurd argues (on various legal theories) that the superior court had no authority to enter judgement against him on the assault charge, even though the jury had found him guilty of this offense at his trial. We address these contentions below.

But in addition, Hurd argues for the first time that the jury's verdict on the third-degree assault charge is flawed in various ways. Specifically, Hurd asserts that the evidence at his trial was insufficient to establish two of the elements of third-degree assault, that the jury received incomplete instructions on one of these elements, and that the trial judge made an erroneous evidentiary ruling

---

**1.** *Whitton,* 479 P.2d at 312–13.

that prevented Hurd from presenting evidence relevant to the assault charge.

For the reasons explained here, we hold that it is too late for Hurd to raise these attacks on the jury's verdict. Hurd should have presented these claims in his first appeal—and, because he did not, he is estopped from presenting them now.

*Underlying facts: Hurd's offenses, his sentencing, and his first appeal*

Leonard P. Hurd was in debt to Dennis Schlotfeldt for several thousand dollars. Hurd invited Schlotfeldt to his house and then held him captive for thirty to forty-five minutes. Hurd refused to let Schlotfeldt leave the house until Schlotfeldt signed documents (1) acknowledging full satisfaction of Hurd's debt, (2) transferring several parcels of land to Hurd, (3) agreeing to give Hurd $25,000 in cash, and (4) acknowledging that he had received a non-existent coin collection from Hurd valued at a quarter of a million dollars. Hurd threatened Schlotfeldt with immediate injury (by threatening to sic his Rottweiler dog on Schlotfeldt) if Schlotfeldt tried to leave the house without signing these documents.

Based on this episode, Hurd was indicted for three felonies: coercion (*i.e.*, compelling another person to engage in acts that they have a right to refrain from doing, by threatening to inflict physical injury on any person), kidnapping (*i.e.*, restraining another person with intent to facilitate the commission of a felony, to wit, coercion), and third-degree assault (*i.e.*, threatening to imminently inflict serious physical injury by means of a dangerous instrument, to wit, the Rottweiler).[2] A jury found Hurd guilty of all three crimes.

Superior Court Judge Charles R. Pengilly ruled that, under the facts of Hurd's case, the third-degree assault (Hurd's act of threatening Schlotfeldt with a dog attack if he tried to leave) was so closely related to the restraint component of the kidnapping that, under the rule announced by our supreme court in *Whitton v. State*,[3] Hurd could not be separately convicted and sentenced for both offenses. Based on this *Whitton* ruling, Judge Pengilly entered a conviction on the kidnapping charge (the more serious offense[4]), and he dismissed the third-degree assault charge "as duplicative of [the kidnapping charge]". Thus, Hurd's judgement reflected convictions for kidnapping and coercion, but not third-degree assault.

After Hurd was sentenced, he filed an appeal to this Court. *See Hurd v. State*, 22 P.3d 12 (Alaska App.2001). In that appeal, Hurd argued that the State presented insufficient evidence to justify his kidnapping conviction. Specifically, Hurd argued that, to the extent he restrained Schlotfeldt, that restraint was only incidental to the crime of coercion, and thus the restraint would not support a separate conviction for kidnapping. In the alternative, Hurd argued that even if the State's evidence was legally sufficient to support the kidnapping conviction, his trial jury had not been properly instructed on the degree of restraint required to support a separate conviction for kidnapping.[5] We ultimately held that the State's evidence established the type of restraint that would support a separate conviction for kidnapping, but we agreed that the jury had not been properly instructed on the type of restraint required to support a separate kidnapping conviction. (The State conceded error on this issue.)[6] We therefore reversed Hurd's kidnapping conviction, but we ruled that "[t]he State [could] try Hurd again for this crime".[7]

For present purposes, not only is it important to note the issues that Hurd raised in this prior appeal, but it is also important to

---

**2.** AS 11.41.530(a)(1), AS 11.41.300(a)(1)(E), and, AS 11.41.220(a)(1)(A) respectively.

**3.** 479 P.2d 302 (Alaska 1970).

**4.** Kidnapping is either an unclassified or a class A felony, depending on whether the victim is released unharmed as described in AS 11.41.300(d), while third-degree assault is a class

C felony. *See* AS 11.41.300(c) and AS 11.41.220(d).

**5.** *Hurd*, 22 P.3d at 14.

**6.** *Id.* at 19–20.

**7.** *Id.* at 20.

note the issues that Hurd failed to raise in the prior appeal. In particular, Hurd did not challenge his coercion conviction, nor did he raise any claim of error with respect to the procedures, the evidence, or the jury instructions that led to the jury's finding him guilty of third-degree assault.

*Underlying facts: the proceedings in the superior court following our decision of Hurd's first appeal*

After we decided Hurd's first appeal, his case returned to the superior court. At a status conference on June 12, 2001, the prosecutor announced that the State did not intend to re-try Hurd for kidnapping. Instead, the prosecutor asked Judge Pengilly to reinstate the previously dismissed third-degree assault conviction, and then sentence Hurd for that offense. Hurd's attorney responded that this proposed course of action "ma[de] sense", especially since it appeared likely that, given this reduction of the offense, Hurd would receive a sentence of imprisonment equal to the time he had already served.

Hurd did not hear this initial conversation between Judge Pengilly and the attorneys. Hurd was scheduled to participate in the status conference by telephone, but the in-court clerk had not yet placed the call. A few minutes later, the call was made and Hurd's telephonic presence was secured. Judge Pengilly then announced to Hurd:

*The Court:* We're back on record in the matter of *State v. Hurd.* Mr. Hurd, your attorney, Mr. Covell, is present [in the courtroom].

We are trying to [schedule] a re-sentencing [hearing]. The State has indicated that it's not going to re-try the kidnapping case, and it just wants to rely on the lesser included offense ... of Assault III, and it wants to go forward with sentencing on that [count].

Mr. Covell, as I look at my calendar, ... it looks like August 13th is the best I can do.

*Defense Attorney:* That's fine, Judge.

. . .

*The Court:* [W]e do need to talk about getting Mr. Hurd released [on bail]. Mr. Covell?

*Defense Attorney:* Yes, Your Honor. As [I] previously stated, ... it appears [that] Mr. Hurd is likely to be in a "time served" situation.... We'd ask that he be released [on his own recognizance].

And, Mr. Hurd, would you rather come back [to Fairbanks] on your own, on a State's ticket, or come back in custody?

*Mr. Hurd:* I'd rather come back on my—on a State's ticket.

*Defense Attorney:* Okay. So we'd ask [that] he be ordered released in Seward, with return transportation [paid] to Fairbanks.

. . .

*The Court:* [Mr. Prosecutor, does the State request] any additional conditions [of release]?

*Prosecutor:* ... Not to have any contact with the victim in this case, or the victim's family. [And] he is to contact his attorney every Wednesday, no later than 3:00 p.m. And that [he] will give permission to Mr. Covell to call [the district attorney's] office if, in fact, [Mr. Hurd] does not call him, and that we can call Mr. Covell's office and check [to] see whether or not [Mr. Hurd] has maintained that contact.

*The Court:* Mr. Covell?

*Defense Attorney:* [Are] those conditions okay with you, Leonard?

. . .

*Mr. Hurd:* I'd request one modification.... And that would be that ... if you were not in the office, ... I'd be allowed to check in with your secretary.

*Defense Attorney:* That's fine.

*Prosecutor:* That's fine.

The parties returned to court on August 13, 2001 for the scheduled sentencing hearing. Judge Pengilly announced that he intended to enter a conviction against Hurd on the third-degree assault charge. The judge asked Hurd's attorney if he agreed that it was "legitimate to enter a conviction as to [this] charge". The defense attorney agreed that this should be done, and he stated that it

was Mr. Hurd's intention to proceed with sentencing.

The prosecutor asked Judge Pengilly to impose a sentence of 5 years' imprisonment, but to suspend the portion of this sentence that exceeded the time Hurd had already served. (Hurd had served 23 months in prison at this point.)

Judge Pengilly noted that, because Hurd had already served 23 months in prison, it appeared that Hurd "[had] already served a sentence that exceeds the *Austin* limit."[8] (Apparently, Judge Pengilly was working under the assumption that a person sentenced to 2 years' imprisonment—the *Austin* ceiling for a class C felony—would normally accumulate their full quota of good time credit and be released after serving 16 months.) However, Judge Pengilly also noted that the State could "legitimate[ly] argu[e]" that Hurd's conduct was among the worst within the definition of the offense—an aggravating factor under AS 12.55.155(c)(10) that would allow the court to exceed the *Austin* ceiling.[9]

Hurd's attorney initially told Judge Pengilly, "[W]e're not here to decide whether it's a worst offense within its category. That [aggravating factor] wasn't noticed up, and it's not what we're here for today." Judge Pengilly responded:

> *The Court:* [Are you] saying that, for some procedural reason, [the prosecutor] can't argue that this is a worst offense?
>
> *Defense Attorney:* Judge, I—[pause] If there is a procedural defense there, I'm going to waive it, because we want to get sentenced.
>
> *The Court:* Right. I mean, if you want to continue [the sentencing], we could [do that].
>
> *Defense Attorney:* No, we don't want— we definitely don't want [that].
>
> *The Court:* All right. So [then] I need to hear your response to the merits of [the] argument [that Mr. Hurd's conduct

was among the most serious within the definition of the offense].

> *Defense Attorney:* All right, Your Honor, . . . I'll make my argument[.]

After hearing argument on this issue, Judge Pengilly found (based on the evidence presented at Hurd's trial) that Hurd was factually guilty of kidnapping. And based on this finding, Judge Pengilly concluded that Hurd's offense was among the most serious third-degree assaults, and that the court was therefore authorized to impose a sentence above the normal *Austin* limit.[10] Judge Pengilly then sentenced Hurd to 5 years' imprisonment, with all of this sentence suspended except for the 23 months that Hurd had already served.

After Hurd was convicted and sentenced for third-degree assault, he hired a new attorney and then filed the present appeal.

*Synopsis of the issues raised in Hurd's present appeal*

In this appeal, Hurd raises four categories of arguments.

Hurd's first category deals with the superior court's legal authority to enter the conviction for third-degree assault. In a series of arguments based on constitutional law, statutory law, and the common law, Hurd contends that even though the jury found him guilty of third-degree assault, Judge Pengilly had no authority to enter a conviction against Hurd for this crime following our resolution of Hurd's first appeal. In the alternative, Hurd argues that he could not be convicted of third-degree assault unless the State took him to trial again on that charge (or unless he knowingly waived a second trial and pleaded guilty).

Hurd's second category actually comprises a single argument. Hurd maintains that even if Judge Pengilly did have the authority to enter a conviction against Hurd for third-

---

**8.** *See Austin v. State,* 627 P.2d 657, 657–58 (Alaska App.1981) (holding that, normally, a first felony offender convicted of a class B or C felony should receive a more favorable sentence than a second felony offender convicted of the same offense).

**9.** *See* AS 12.55.125(k)(2).

**10.** *See Benboe v. State,* 698 P.2d 1230, 1232 (Alaska App.1985) (holding that an offense qualifies as "among the most serious" for purposes of aggravator (c)(10) if the defendant's conduct factually constituted a higher degree of offense).

degree assault, the judge violated Alaska Criminal Rule 38(a) by making the decision to enter the third-degree assault conviction during the initial portion of the status conference of June 12, 2001—the conversation between the judge and the attorneys that took place before Hurd began his telephonic participation in the conference.

Hurd's third category of arguments involves alleged substantive and procedural errors at his trial. Hurd argues that the evidence at his trial was insufficient to establish the offense of third-degree assault. Specifically, Hurd contends that even if the evidence was sufficient to establish that Hurd threatened to sic his Rottweiler on Schlotfeldt, the State failed to prove that Hurd's Rottweiler was a "dangerous instrument", or that Schlotfeldt was placed in reasonable fear of imminent serious physical injury by Hurd's actions. Alternatively, Hurd argues that even if the evidence presented at his trial was legally sufficient to support a conviction for third-degree assault, the jury instructions were inadequate to explain the concept of "dangerous instrument" as applied to the facts of Hurd's case. In addition, Hurd argues that Judge Pengilly made an erroneous evidentiary ruling at trial—a ruling that prevented Hurd from presenting evidence that the defense attorney had offered the prosecutor an opportunity to have a dog expert examine Hurd's Rottweiler, and the prosecutor had declined this opportunity.

Hurd's fourth category of arguments comprises attacks on his sentence for third-degree assault. Hurd argues that Judge Pengilly violated the double jeopardy clause by imposing a sentence that included suspended imprisonment and a term of probation, when Hurd's original sentence (*i.e.*, his sentence for kidnapping and coercion) did not include any suspended imprisonment or probation. And Hurd argues that even if Judge Pengilly could lawfully impose suspended jail time and a term of probation, the sentence chosen by Judge Pengilly—5 years' imprisonment, with all of it suspended except for the time Hurd had already served—is excessive.

The State acknowledges that Hurd is entitled to raise his first, second, and fourth categories of arguments. That is, the State agrees that Hurd is entitled to attack Judge Pengilly's legal authority to enter a conviction for third-degree assault, that Hurd is entitled to argue that Judge Pengilly violated Criminal Rule 38(a) during the court proceedings that occurred after our decision of Hurd's first appeal, and that Hurd is entitled to challenge his sentence for third-degree assault.

However, the State contends that Hurd is not entitled to pursue his third category of arguments—the arguments in which Hurd challenges the procedures and the evidentiary rulings at his trial, and in which Hurd attacks the sufficiency of the evidence presented at that trial to support a conviction for third-degree assault. The State argues that it is too late for Hurd to raise these arguments now—that Hurd was obliged to raise these claims in his prior appeal, and that Hurd's failure to do so means that he is estopped from presenting these claims in his current appeal.

## Part A

Hurd's arguments that the superior court had no legal authority to enter judgement against him for third-degree assault

*Did Judge Pengilly violate Hurd's constitutional protection against double jeopardy, or his constitutional right to jury trial, by entering a conviction against Hurd for third-degree assault following our resolution of Hurd's first appeal?*

As explained above, Hurd's trial jury found him guilty of all three counts of the indictment: coercion, kidnapping, and third-degree assault. However, Judge Pengilly later ruled that, under the facts of Hurd's case, the conduct comprising the third-degree assault charge (*i.e.*, Hurd's threat to sic his Rottweiler on Schlotfeldt) was, in essence, a component of the "restraint" underlying the kidnapping charge. Based on this analysis, Judge Pengilly ruled that Hurd's crimes of kidnapping and third-degree assault constituted the "same offense" for purposes of a *Whitton* analysis. And based on this ruling, Judge Pengilly dismissed the third-degree

assault count because it was "duplicative of [the kidnapping count]".

As we pointed out in *Kailukiak v. State*, 959 P.2d 771, 774 n. 1 (Alaska App.1998), it is technically incorrect for a sentencing court to "dismiss" a count on *Whitton* grounds. Even though the Alaska double jeopardy clause, as construed in *Whitton*, prevents a sentencing court from entering separate convictions and sentences on two counts that constitute the "same offense", a *Whitton* ruling does not impugn the validity of the jury's underlying verdicts. That is, a *Whitton* ruling that two counts are duplicative casts no doubt on the validity of the jury's fact-finding or its conclusion that the defendant is guilty of the conduct alleged in both counts.[11] For this reason, even though this Court has occasionally spoken of "dismissal" of the duplicative count, we have most often (and most correctly) described the proper course of action as a "merger" of the two counts into a single conviction—*i.e.*, the entry of one conviction and sentence premised on both jury verdicts.[12]

In Hurd's first appeal, he challenged the sufficiency of the evidence at his trial to support a conviction for kidnapping. In particular, Hurd argued that the State failed to prove that he restrained Schlotfeldt to any significant degree apart from the restraint inherent in the crime of coercion. We rejected this contention, holding instead that the evidence of restraint was sufficient to support a separate conviction for kidnapping. However, we concluded that Hurd's jury had not been properly instructed on the degree of restraint required for a kidnapping conviction, and so we ruled that Hurd was entitled to a new trial on the kidnapping charge.

In the current appeal, Hurd argues that our decision entitled him to a new trial on the third-degree assault charge as well. He reasons as follows: (1) the kidnapping count and the third-degree assault count constituted the "same offense" for *Whitton* purposes; (2) we ruled that Hurd was entitled to a new trial on the kidnapping count; therefore (3) he was entitled to a new trial on the third-degree assault count, too.

But as we just explained, the fact that two counts may be the "same offense" for *Whitton* purposes has nothing to do with the validity of the jury's verdicts finding the defendant guilty of both counts. *Whitton* addresses the question of how many convictions and sentences may properly be entered based on those verdicts; it does not address the question of whether those verdicts were arrived at lawfully.

In Hurd's earlier appeal, he attacked the validity of the kidnapping verdict, and we agreed that the jury had not been properly instructed on the "restraint" element of kidnapping. But this flaw in the jury instructions defining the elements of kidnapping had nothing to do with the validity of the jury's verdict on the third-degree assault charge. (Indeed, Hurd did not even purport to attack the validity of that verdict.) Thus, our decision of Hurd's earlier appeal did not impugn or affect the validity of the jury's verdict that Hurd was guilty of third-degree assault.

When Hurd's case returned to the superior court, and the prosecutor declared that the State no longer wished to pursue the kidnapping charge, Judge Pengilly was authorized to enter judgement against Hurd based on the jury's verdict that Hurd was guilty of third-degree assault. The validity of this verdict had never been challenged, and the former impediment to entry of judgement on the assault count was now removed, because the State was renouncing its legal right to try Hurd a second time for kidnapping.

In analogous situations, when we have found a flaw in the evidence or procedures leading to a defendant's conviction for a

---

11. *Allain v. State*, 810 P.2d 1019, 1021 (Alaska App.1991).

12. *See State v. McDonald*, 872 P.2d 627, 660 & n. 14 (Alaska App.1994); *Allain*, 810 P.2d at 1021. *See also Bachlet v. State*, 941 P.2d 200, 209 (Alaska App.1997); *Knix v. State*, 922 P.2d 913, 923 (Alaska App.1996); *Yearty v. State*, 805 P.2d 987, 995 (Alaska App.1991); *Machado v. State*, 797 P.2d 677, 687 (Alaska App.1990); *Newsome v. State*, 782 P.2d 689, 691–92 (Alaska App.1989). *And see Erickson v. State*, 950 P.2d 580, 582 (Alaska App.1997); *Hathaway v. State*, 925 P.2d 1343, 1345 n. 2 (Alaska App.1996); *Coleman v. State*, 846 P.2d 141, 142 (Alaska App.1993).

greater offense, but when this flaw did not affect the validity of the jury's finding or the defendant's plea with regard to a lesser offense, we have authorized the State to forego further prosecution of the greater offense and simply ask the trial court to enter judgement on the lesser offense.[13]

(For a similar decision by the United States Supreme Court, in a case where prosecution of the greater offense was barred by the double jeopardy clause but prosecution of the lesser offense was not, see *Morris v. Mathews,* 475 U.S. 237, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986). The Supreme Court held that it was proper for the state appellate court to amend the defendant's judgement to reflect a conviction for the lesser, non-jeopardy-barred offense, because the defendant failed to demonstrate a reasonable probability that the inclusion of the greater, jeopardy-barred charge tainted the jury's consideration of the lesser offense.[14])

We reach the same result in the *Whitton* situation presented in Hurd's appeal. Hurd never claimed, much less demonstrated, that there was any infirmity in the jury's verdict finding him guilty of third-degree assault. Because Hurd no longer faced conviction and sentencing on the kidnapping charge, Judge Pengilly's *Whitton* ruling no longer prevented the entry of judgement against Hurd for third-degree assault. And finally, Hurd did not assert that it would be unfair, for any other reason, to enter judgement against him

on the assault charge. We note that Hurd's attorney—that is, his attorney at that time—announced that this course of action "ma[de] sense".

In his brief to this Court, Hurd argues that the entry of judgement for third-degree assault was a "successive prosecution" barred by the double jeopardy clause. This is incorrect. Hurd was tried but once, and the judgement that Judge Pengilly entered against him was premised on the jury's verdict from that trial.

Hurd also argues that the entry of this judgement deprived him of the constitutional right to jury trial. This, too, is incorrect. Hurd was tried by a jury for the offense of third-degree assault, the jury found him guilty, and his assault conviction is based on the jury's verdict.

*Was Hurd's third-degree assault conviction barred by the combination of AS 12.20.020 and AS 12.20.050?*

Hurd argues that, because Judge Pengilly previously dismissed the third-degree assault count, that count can not be revived. As the basis for this argument, Hurd relies on two Alaska statutes, AS 12.20.020 and AS 12.20.050. There are two flaws in Hurd's argument.

First, by their wording, neither of these statutes applies to the circumstances of Hurd's case.[15] Indeed, Hurd's opening brief

13. *See Atkinson v. State,* 869 P.2d 486, 495–96 (Alaska App.1994); *Willett v. State,* 836 P.2d 955, 960 n. 2 (Alaska App.1992); *S.R.D. v. State,* 820 P.2d 1088, 1093 (Alaska App.1991); *Kennedy v. State,* 786 P.2d 928, 930–31 (Alaska App.1990); *Nathaniel v. State,* 668 P.2d 851, 857 n. 4 (Alaska App.1983); *Nix v. State,* 624 P.2d 823, 824–25 (Alaska App.1981), *appeal after remand, Nix v. State,* 690 P.2d 745, 745–46 (Alaska App.1984).

14. 475 U.S. at 246–47, 106 S.Ct. at 1037–38.

15. AS 12.20.020 reads:
**When acquittal or dismissal is not a bar.** If the defendant is acquitted on the ground of a variance between the charge and the proof, or the charge is dismissed upon an objection to its form or substance, or discharged for want of prosecution, without a judgment of acquittal or in bar of another prosecution, it is not an acquittal of the crime and does not bar a subsequent prosecution for the same crime.
AS 12.20.050 reads:

**Dismissal as bar.**
(a) It is a bar to another prosecution for the same crime if the crime is a misdemeanor, but it is not a bar if the crime charged is a felony when a person is
(1) held to answer to the grand jury and the court dismisses the charge before the case is presented to the grand jury upon the motion of the prosecuting attorney;
(2) held to answer to the grand jury and the court dismisses the charge because the indictment is not found against the person at the next session of the grand jury; or
(3) indicted for a crime and the indictment is dismissed because the trial is not held within a reasonable period of time, and there is not good cause shown for the delay, and the delay was not upon the application of the defendant or with the defendant's consent.
(b) Unless the court directs a judgment of acquittal to be entered, it is not a bar to another action for the same crime if the court orders an indictment to be discharged because the prose-

expressly concedes that "[n]one of [the three] situations [addressed in AS 12.20.020] apply to [his] case". And we recently rejected Hurd's proposed interpretation of the second statute, AS 12.20.050. *See Schouten v. State,* 77 P.3d 739, 742–45 (Alaska App.2003).

Second, as we explained above, the "dismissal" of the third-degree assault count was done on *Whitton* grounds. This count was not dismissed for any procedural irregularity, legal insufficiency, or flaw in the jury's verdict. Instead, it was set aside because Judge Pengilly concluded that Hurd could not lawfully be convicted and sentenced for the third-degree assault if Hurd was to be convicted and sentenced for the related kidnapping.

As we also explained above, the third-degree assault count should not have been "dismissed" under these circumstances (at least, as that term is usually understood); rather, it should have been merged with the kidnapping count. We must categorize and give effect to Judge Pengilly's action in its rightful legal context—*i.e.,* a merger of counts based on a *Whitton* ruling—regardless of the label that Judge Pengilly attached to his action.[16]

*Was the State estopped from asking the superior court to enter judgement against Hurd for third-degree assault?*

Hurd also argues that, under the doctrine of *res judicata,* or under related doctrines of estoppel, the State was barred from asking Judge Pengilly to enter judgement against Hurd for third-degree assault.

As we explained earlier, after the jury found Hurd guilty of both kidnapping and third-degree assault, Judge Pengilly ruled that these two counts constituted the "same offense" for *Whitton* purposes. The judge therefore convicted and sentenced Hurd for kidnapping (the more serious charge), but he declined to enter judgement against Hurd for third-degree assault.

The State could have asked this Court to review Judge Pengilly's *Whitton* ruling,[17] or the State might have filed a cross-appeal after Hurd filed his appeal of the kidnapping conviction, but the State did not pursue either of these options. Hurd now argues that, because of the State's inaction, the State was estopped from asking Judge Pengilly to enter judgement against Hurd for third-degree assault after Hurd's case returned to the superior court following our decision of Hurd's first appeal.

Hurd's argument is based on a misunderstanding of the nature of Judge Pengilly's *Whitton* decision. As we explained in the preceding section of this opinion, Judge Pengilly ruled that, under *Whitton,* Hurd could not lawfully be convicted and sentenced for the third-degree assault *if* Hurd was to be convicted and sentenced for the factually related kidnapping. In other words, Judge Pengilly ruled that Hurd could be convicted and sentenced for one count or the other, but not both—and, therefore, the judge convicted and sentenced Hurd for the more serious offense, kidnapping.

Because the State failed to seek appellate review of Judge Pengilly's decision, the State is arguably now estopped from contending that Judge Pengilly's *Whitton* ruling was wrong—*i.e.,* estopped from arguing that Hurd actually could have been convicted and sentenced separately for both kidnapping and third-degree assault. But the State has never argued this.

Instead, after this Court reversed Hurd's kidnapping conviction, the State asked Judge Pengilly to take an action that was wholly consistent with his earlier ruling. The judge had ruled that Hurd could not be convicted and sentenced for assault if he was going to be convicted and sentenced for kidnapping. But after our reversal of Hurd's kidnapping conviction, and after the State's decision not to seek a re-trial of the kidnapping charge, Hurd was no longer going to be convicted

cuting attorney is not prepared to go to trial when the indictment is called for trial and does not show sufficient cause for postponing the trial.

16. *See Collins v. State,* 977 P.2d 741, 751 (Alaska App.1999); *State v. Martushev,* 846 P.2d 144, 148 (Alaska App.1993).

17. *See State v. Occhipinti,* 562 P.2d 348, 349, 351 (Alaska 1977).

and sentenced for kidnapping. This meant that there was no longer a *Whitton* impediment to Hurd's conviction and sentencing for third-degree assault.

Because entry of judgement against Hurd for third-degree assault was consistent with Judge Pengilly's earlier *Whitton* ruling, the State was not estopped from asking Judge Pengilly to take this action.

(It may go without saying, but we express no opinion on the correctness of Judge Pengilly's *Whitton* ruling.)

*Did the superior court exceed this Court's mandate (from our decision of Hurd's previous appeal) when the superior court entered judgement against Hurd for third-degree assault?*

Finally, Hurd argues that Judge Pengilly's entry of judgement against him for third-degree assault constituted an unlawful deviation from the instructions this Court gave to the superior court when we decided Hurd's first appeal.

■ Under Alaska law, when an appellate court remands a case to a lower court with a specific "mandate"—*i.e.,* specific directions to do something—the lower court must obey the appellate court's directions.[18] But we issued no mandate to the superior court when we decided Hurd's previous appeal.

In our previous decision, we held that Hurd's kidnapping conviction had to be reversed because the jury was not adequately instructed on the element of "restraint".[19] However, we also held that the evidence presented at Hurd's trial was sufficient to support a conviction for kidnapping, and thus the State remained free to "try Hurd again for this crime".[20] Finally, we held that Hurd had been properly indicted for kidnapping, and thus the State did not have to re-indict Hurd on this charge.[21]

Hurd asserts that, in our previous decision, we "ordered a retrial on [the] kidnapping [charge]". Hurd is incorrect, at least to the extent he claims that our decision constituted a "mandate" to the superior court or to the Alaska Department of Law.

Attorneys and judges often say that an appellate court has "ordered" a new trial in a civil or criminal case. But this is a shorthand description of the appellate court's true ruling: that the complaining litigant is entitled to a new trial *if the plaintiff chooses to pursue the litigation.* This Court has never ordered the State to re-try a criminal case regardless of the State's wishes. Indeed, such an order might exceed this Court's lawful powers.[22]

When we said, in our previous decision, that "[t]he State *may* try Hurd again" (emphasis added), we meant just that. The State was authorized to bring Hurd to trial again for kidnapping if the State chose to do so. We did not bar the State from pursuing other courses of action, such as foregoing further prosecution of the kidnapping charge and asking the superior court to enter judgement against Hurd based on the jury's verdict that Hurd was guilty of third-degree assault. Moreover, we had no instructions for the superior court, apart from the implicit instruction to wait to see what the State chose to do with regard to re-trying Hurd for kidnapping.

As we pointed out earlier in this opinion (see the text on page 15 and the cases cited in footnote 13), Judge Pengilly's decision to enter judgement based on the jury's remaining verdict was wholly consistent with our decisions in this area of the law.

For these reasons, we reject Hurd's suggestion that Judge Pengilly unlawfully deviated from our "mandate" when he entered judgement against Hurd for third-degree assault.

*Conclusion of Part A*

For the reasons explained here, we reject Hurd's several arguments that the superior

---

**18.** *See Alaska Commercial Fisheries Entry Comm'n v. Carlson,* 65 P.3d 851, 873 (Alaska 2003); *Gaudiane v. Lundgren,* 754 P.2d 742, 744 (Alaska 1988); *Cleary v. State,* 564 P.2d 374, 377 (Alaska 1977); *Preston v. State,* 634 P.2d 550, 552 (Alaska 1981).

**19.** *Hurd,* 22 P.3d at 20.

**20.** *Id.*

**21.** *Id.*

**22.** *See Public Defender Agency v. Superior Court,* 534 P.2d 947, 950–52 (Alaska 1975).

court had no authority to enter judgement against him for third-degree assault. We conclude that the superior court had this authority.

## Part B

Hurd's argument that the superior court violated his right to be present at all substantive proceedings following our remand of his case to the superior court

*Did Judge Pengilly violate Hurd's right under Alaska Criminal Rule 38(a) to be present at all substantive stages of a criminal proceeding when, before Hurd joined the status conference of June 12, 2001 by telephone, Judge Pengilly spoke with the prosecutor and Hurd's attorney concerning the judge's intention to enter judgement against Hurd for third-degree assault?*

■ Hurd argues that Judge Pengilly violated Alaska Criminal Rule 38(a) by conversing with the attorneys at the beginning of the status conference of June 12, 2001, before Hurd was present—*i.e.*, before the in-court clerk placed the telephone call to Hurd, allowing Hurd to participate in the hearing.

Hurd further asserts that he was prejudiced by his absence from the first part of the status conference because, during this part of the conference, Judge Pengilly decided to enter judgement against Hurd on the third-degree assault count. Hurd concedes that his attorney did not object to the proposed entry of judgement; in fact, the defense attorney declared that this action "made sense" under the circumstances. But Hurd argues that, had he been telephonically present when this discussion occurred, he would have asked his attorney to review the file and to research the pertinent law before agreeing that the superior court could enter judgement against Hurd for third-degree assault.

The State does not contest Hurd's assertion that, under Criminal Rule 38(a), Hurd was entitled to participate in this discussion. However, the State argues this violation of the rule was harmless beyond a reasonable doubt. We agree.

The matter being discussed in Hurd's absence was the State's right to forego further prosecution of the kidnapping charge and to have the superior court enter judgement against Hurd on the remaining jury verdict—the verdict declaring Hurd guilty of third-degree assault. Even if we assume that Hurd could have convinced his attorney to oppose this course of action, and even if we assume that Hurd's attorney would have raised the same legal objections that Hurd has presented in this appeal, this would not have affected the outcome of the proceeding—because we have just concluded that all of Hurd's objections are meritless, and that the superior court properly entered judgement against Hurd for third-degree assault.

We also note that, even though Hurd missed the first part of the June 12th status conference, Hurd clearly knew by the end of that conference that Judge Pengilly intended to enter judgement against him for third-degree assault and to sentence him for that offense. However, the sentencing hearing did not take place until two months later, on August 13th. Thus, if Hurd thought that his attorney had agreed too quickly to the proposed entry of judgement on the assault charge, or if Hurd wanted his attorney to research the issue and then potentially ask Judge Pengilly to reconsider, there was plenty of time for this to happen. (Moreover, under the terms of Hurd's bail release, he was obliged to contact his attorney's office on a weekly basis.) But when Hurd and his attorney appeared in court for sentencing on August 13th, neither of them voiced any objection to the entry of judgement on the third-degree assault charge.

We therefore conclude that if the superior court violated Criminal Rule 38(a) by holding this discussion before Hurd joined the status conference by telephone, the violation was harmless beyond a reasonable doubt.

## Part C

The State's argument that Hurd can no longer attack his third-degree assault conviction by challenging the procedures, evidentiary rulings, and jury instructions at his trial

*Introduction*

■ In his brief to this Court, Hurd contends that the evidence presented at his trial

was insufficient to support the jury's verdict finding Hurd guilty of third-degree assault. In addition, Hurd argues that his assault conviction should be reversed for alleged flaws in the evidentiary rulings and jury instructions at his trial.

In particular, Hurd argues that the State presented insufficient evidence that Hurd's Rottweiler qualified as a "dangerous instrument" under AS 11.81.900(b)(15).[23] In a related argument, Hurd also contends that the State presented insufficient evidence that Hurd's actions caused Schlotfeldt to reasonably fear imminent serious physical injury. In addition, Hurd asserts that his jury should have received a particularized, case-specific instruction on the meaning of "dangerous instrument". And, finally, Hurd argues that Judge Pengilly abused his discretion under Evidence Rule 403 when the judge refused to let Hurd present evidence that the defense had offered to allow the State (or, more precisely, a canine expert employed by the State) to examine Hurd's Rottweilers, but the prosecutor declined this opportunity.

The State responds to Hurd's arguments by asserting that it is too late for Hurd to raise these contentions. The State asserts that Hurd could have raised these arguments in his first appeal—and that, because he did not, he is estopped from presenting these arguments now.

The State's argument rests on the concept of "claim preclusion" and the related prohibition against "claim splitting". The gist of the State's argument is that when Hurd pursued his earlier appeal, he had the opportunity to attack the sufficiency of the evidence and the validity of the procedures and legal rulings at his trial that led to his conviction for third-degree assault. Instead, Hurd attacked only (1) the sufficiency of the State's evidence to support a kidnapping conviction, and (2) the adequacy of the jury instructions pertaining to the "restraint" element of kidnapping. The State argues that Hurd should not now be allowed to raise new challenges to the procedures and evidence underlying the jury's third-degree assault verdict.

Hurd replies that the doctrine of claim preclusion, and the related prohibition on claim splitting, do not apply to situations like his case—situations in which there has been an earlier appeal in the same case, followed by renewed litigation in the trial court and a subsequent appeal.

Hurd also argues, in the alternative, that even if the prohibition on claim splitting applies to situations like his (an appeal, followed by renewed proceedings in the lower court, followed by another appeal), the doctrine nevertheless should not be applied to him under the facts of his case. Hurd notes that the prohibition on claim splitting applies only to claims that could have been raised earlier, and Hurd contends that he could not have attacked the validity of his third-degree assault conviction in his prior appeal.

*Under Alaska law, litigants are required to present all of their ripe claims of error when they appeal a lower court's decision*

Alaska law recognizes three distinct but related doctrines that prohibit or limit repetitive litigation.

Under the doctrine of *res judicata*, once a court has entered a final judgement on the merits of litigation between parties, those parties (and those who share their interests) are barred from pursuing subsequent litigation concerning the same cause of action.[24] The doctrine of *res judicata* not only prohibits re-litigation of already litigated claims, but it also bars the parties from raising new claims or defenses that could have been raised in the prior litigation.[25] In other words, *res judicata* prevents "claim splitting": all claims arising out of a single transaction must be presented in a single lawsuit, and any claims that were not pre-

---

**23.** Under this statute, "dangerous instrument" is defined as "anything that, under the circumstances in which it is used . . . or threatened to be used, is capable of causing death or serious physical injury".

**24.** *See Plumber v. University of Alaska Anchorage,* 936 P.2d 163, 166 (Alaska 1997).

**25.** *McElroy v. Kennedy,* 74 P.3d 903, 906 & n. 7 (Alaska 2003); *Robertson v. American Mechanical, Inc.,* 54 P.3d 777, 780 (Alaska 2002).

sented become extinguished by the final judgement in that lawsuit.[26]

■ Under the related doctrine of collateral estoppel, even when the new litigation between the parties is not barred by the doctrine of *res judicata*, the parties are nevertheless prohibited from re-litigating factual or legal issues that were essential to the decision of a previous lawsuit between the parties.[27]

■ Finally, the doctrine of "law of the case" applies to parties' attempts to re-open issues that were decided in earlier stages of the same lawsuit. This doctrine requires a lower court to follow an appellate court's prior decision, and it prohibits re-litigation of issues that were decided in an earlier appeal in the case.[28]

Hurd's case presents a situation that does not fit comfortably within any of these three doctrines. The State asks us to apply a rule of claim preclusion or claim splitting to Hurd's case. But as Hurd correctly points out, of the three doctrines we have mentioned, only the doctrine of *res judicata* has a claim-splitting component—and *res judicata* applies only to *subsequent* lawsuits between the parties, not later stages of the same lawsuit that take place following earlier appeals.[29]

The doctrine that applies to subsequent stages of the same lawsuit is "law of the case". But that doctrine limits the parties' right to re-open previously decided issues; it does not address the question of whether parties can take advantage of subsequent stages of the litigation to raise previously undecided claims.

Nevertheless, Alaska law prohibits parties from splitting their claims among different appeals in the same lawsuit. There may be no neat label for this doctrine, but both the Alaska Supreme Court and this Court have recognized the doctrine and have applied it.

In *Alaska Commercial Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851 (Alaska 2003), our supreme court confronted a lawsuit for the third time—after two prior decisions and two prior remands. In this third appeal, the State attempted to inject a new defense—sovereign immunity—for the first time. The supreme court held that the State had no right to raise this new claim:

> Successive appeals should narrow the issues in a case, not expand them. Other jurisdictions have explicitly ruled that all matters that were or might have been determined in a former appeal may not be presented in a subsequent appeal of the same case. The basis for this rule is that "[j]udicial economy and the parties' interests in the finality of judgments are in no way furthered if parties are allowed to engage in piecemeal appeals." We have expressed a similar rule in the context of res judicata, which involves subsequent suits rather than subsequent appeals. Because [the State's claim] could have been raised in earlier appeals but was not, and because it therefore falls outside the scope of our specific remand in *Carlson II*, we decline to address the State's "sovereign immunity" defense....

*Carlson*, 65 P.3d at 873–74.[30]

Twenty years earlier, in *Nix v. State*, 690 P.2d 745 (Alaska App.1984), this Court applied this same doctrine—a prohibition on

**26.** *Robertson v. American Mechanical*, 54 P.3d at 780; *Osborne v. Buckman*, 993 P.2d 409, 412 (Alaska 1999).

**27.** *Universal Motors, Inc. v. Neary*, 984 P.2d 515, 518 n. 11 (Alaska 1999).

**28.** *Bauman v. Day*, 942 P.2d 1130, 1132 n. 1 (Alaska 1997).

**29.** *See Commercial Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 874 (Alaska 2003) ("res judicata ... involves subsequent [law]suits rather than subsequent appeals").

**30.** Citing *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 46 P.3d 431, 436 (Ariz.App.2002); *Mont-gomery v. Trisler*, 771 N.E.2d 1234, 1239 (Ind. App.2002); *Baker v. Nat'l State Bank*, 353 N.J.Super. 145, 801 A.2d 1158, 1167 (2002); *MacKay v. Hardy*, 973 P.2d 941, 947 (Utah 1998); *Penrich, Inc. v. Sullivan*, 140 N.H. 583, 669 A.2d 1363, 1367 (1995); *Hartford Nat'l Bank & Trust Co. v. Tucker*, 195 Conn. 218, 487 A.2d 528, 530 (1985); *First American Nat'l Bank v. Booth*, 270 Ark. 702, 606 S.W.2d 70, 71 (1980); *Kazubowski v. Kazubowski*, 45 Ill.2d 405, 259 N.E.2d 282, 288 (1970); *E.F. Prichard Co. v. Heidelberg Brewing Co.*, 314 Ky. 100, 234 S.W.2d 486, 487–88 (1950).

claim splitting—to prevent a criminal defendant from raising new issues in his third appeal, following proceedings on remand from our earlier two decisions in his case.

The facts of *Nix* bear some resemblance to the facts of Hurd's case. A jury convicted Nix of two counts of burglary arising from the same criminal episode; each count alleged a different theory of how Nix's conduct amounted to burglary. In Nix's first appeal, this Court held that both of the State's theories of burglary were flawed, and that Nix's conduct had not (as a legal matter) amounted to burglary.[31] However, we also concluded that the allegations in the purported burglary counts were legally sufficient to charge Nix with two misdemeanors: one of the counts was adequate to charge Nix with unlawful entry of a residence, while the other was adequate to charge him with committing an assault.[32] For this reason, we remanded Nix's case to the superior court with directions to enter convictions for these two misdemeanors, unless Nix demonstrated that he would be unfairly prejudiced by this procedure.[33]

The superior court ultimately entered the two misdemeanor convictions against Nix, and Nix appealed the superior court's decision.[34] In this subsequent appeal, Nix not only attacked the actions taken by the superior court during the remand proceedings, but he also argued—for the first time—that his original trial proceedings were flawed because the prosecutor had engaged in improper argument during the State's summation to the jury. This Court held that it was too late for Nix to attack the validity of the jury verdicts:

> In his appeal from the judgment entered on remand, Nix raises three issues for the first time. He argues that the prosecutor committed plain error in mentioning to the jury [Nix's] post-arrest silence, and in arguing that Nix entered his victim's trailer for the purpose of raping her. Finally, Nix argues that his counsel's failure to object to the prosecutor's argument consti-

tuted ineffective assistance of counsel. None of these errors, if established, is jurisdictional. While a finding of plain error would justify this court's recognizing an issue for the first time on appeal even though it was not preserved at the trial level, it does not justify raising an issue for the first time in an appeal from a judgment on remand after two prior appeals. We therefore decline to consider these additional issues.

*Nix*, 690 P.2d at 746 n. 1.

 Based on the decisions in *Carlson* and *Nix*, we conclude that Alaska (in accord with many other states) has grafted a prohibition on claim splitting onto the "law of the case" doctrine. Not only are parties prohibited from re-litigating issues that were decided in earlier appeals, but they are also prohibited from raising claims in later appeals if those claims could have been raised in earlier appeals.

Whatever term the supreme court may ultimately adopt to describe this rule, the rule itself is clear: If Hurd could have presented his attacks on the procedures, evidence, and jury instructions relating to his third-degree assault conviction when he pursued his earlier appeal, then his failure to do so at that time will bar him from pursuing those attacks now.

*Could Hurd have challenged the procedures, evidence, and jury instructions relating to his third-degree assault conviction when he litigated his prior appeal?*

Hurd's trial was over when Hurd pursued his first appeal; the jury had found him guilty of all three charges contained in the indictment: coercion, kidnapping, and third-degree assault. Thus, if Hurd believed that the State's evidence was insufficient to support the jury's verdict on third-degree assault, or if Hurd thought that the superior court had made erroneous rulings concerning the evidence relevant to the third-degree assault charge, or if Hurd thought that the

---

**31.** *Nix v. State,* 624 P.2d 823, 824–25 (Alaska App.1981).

**32.** *Id.* at 824–25.

**33.** *Id.* at 825.

**34.** *See Nix,* 690 P.2d at 745.

superior court had failed to give the jurors adequate instruction on the elements of third-degree assault, then Hurd seemingly could have raised these issues in his earlier appeal.

Hurd argues, however, that this is not so. He points out that, after Judge Pengilly ruled in his favor on the *Whitton* issue, the judge dismissed the third-degree assault count as duplicative of the kidnapping count. Thus, Judge Pengilly entered judgement only on the coercion and kidnapping counts. Hurd contends that, under these circumstances, he could not be expected to raise issues on appeal pertaining to the validity of the third-degree assault verdict—because that count was now dismissed, making all of his arguments moot.

But as we explained in Part A of this opinion, a merger of counts under *Whitton*—or, as in Hurd's case, the "dismissal" of a count under *Whitton*—does not mean that there is any legal infirmity in the jury's verdict on either count. The judge has simply ruled that the two counts are so closely related that the defendant can not be convicted and sentenced for both.

In Hurd's case, Judge Pengilly ruled that Hurd could not lawfully be convicted and sentenced for third-degree assault if Hurd was to be convicted and sentenced for kidnapping. In other words, the sole impediment to Hurd's conviction for third-degree assault was the fact that he had also been found guilty of the related kidnapping, and that he would be convicted and sentenced for this kidnapping.

In Hurd's first appeal, he argued that the State's evidence was insufficient, as a matter of law, to establish the offense of kidnapping. If Hurd had been successful in this claim, the kidnapping charge would have been dismissed with prejudice—but the third-degree assault verdict would have remained. Hurd's appellate attorney knew or reasonably should have known that if we granted Hurd's request for dismissal of the kidnapping charge, then, in the absence of any attack on the third-degree assault count, the superior court would have the authority to enter judgement

against Hurd for third-degree assault—because our dismissal of the kidnapping charge would have removed the only legal impediment to the entry of judgement on that assault count.

Hurd's fall-back position in his first appeal was that, even if the State's evidence was legally sufficient to support a kidnapping conviction, Hurd was nevertheless entitled to a new trial because the jury had not been properly instructed on the type of restraint needed to establish the offense of kidnapping.

As we explained in Part A of this opinion, this Court has long applied the rule that if there is a flaw in the evidence or procedures leading to a defendant's conviction for a greater offense, but if this flaw did not affect the validity of the jury's finding or the defendant's plea with regard to a lesser offense, then (in the absence of demonstrable prejudice to the defendant) the State is authorized to forego further prosecution of the greater offense and simply ask the trial court to enter judgement on the lesser offense.[35] Thus, Hurd's appellate attorney knew or reasonably should have known that if we agreed with Hurd that he was entitled to a new trial on the kidnapping charge, there was a chance that the State would decide not to retry Hurd on kidnapping and would instead ask the superior court to enter judgement against Hurd for third-degree assault.

Under either scenario, Hurd's appellate attorney knew or reasonably should have known that one potential outcome of Hurd's first appeal was the disappearance of the kidnapping charge and the reinstatement of the third-degree assault charge. Thus, Hurd's attorney knew or reasonably should have known that if the jury's third-degree assault verdict could be challenged on any ground, it was time to raise those challenges.

But in that first appeal, Hurd raised no issue concerning the validity of the third-degree assault verdict. Instead, he allowed that verdict to go unchallenged—with the foreseeable consequence that, when Hurd's case returned to the superior court and the State decided to forego further prosecution

**35.** See the cases listed in footnote 13.

of the kidnapping charge, Judge Pengilly concluded that he should enter judgement against Hurd based on the assault verdict.

At this point, Hurd is not entitled to go back and challenge the validity of the procedures, the evidence, or the jury instructions underlying that verdict. As we explained earlier in this opinion, Alaska law prohibits this type of piecemeal litigation of a litigant's appellate claims.

We therefore agree with the State that, at this stage of the case (*i.e.,* a second appeal following proceedings on remand), Hurd is estopped from arguing that the jury's third-degree assault verdict is not adequately supported by the evidence, or that this verdict was based on faulty or incomplete jury instructions, or that the verdict is flawed because of purported mistakes in Judge Pengilly's evidentiary rulings at Hurd's trial.

*Moreover, Hurd has failed to demonstrate plain error with respect to the procedures, evidence, and jury instructions relating to his third-degree assault conviction*

The particular facts of Hurd's case provide a second obstacle to the litigation of his attacks on the third-degree assault verdict. From the record of the proceedings on remand in the superior court, it appears that Hurd's attorney consciously refrained from objecting to the entry of judgement on that verdict.

As we explained earlier in this opinion, when Hurd's case returned to the superior court and the prosecutor announced that the State would not re-try the kidnapping charge, the parties and Judge Pengilly discussed what should happen next. During that discussion at the status conference (on June 12, 2001), and again two months later at Hurd's sentencing hearing (on August 13, 2001), Hurd's attorney explicitly told Judge Pengilly that Hurd did not object to the entry of judgement on the third-degree assault charge.

At the June status conference, Hurd's attorney declared that entry of judgement on the assault charge "ma[de] sense", given the State's decision not to re-try Hurd for kidnapping. And at the August sentencing hearing, when Judge Pengilly asked the defense attorney if he believed that it was "legitimate to enter a conviction as to [the third-degree assault] charge", the defense attorney agreed that this should be done.

In other words, the attacks on the third-degree assault verdict that Hurd raises in his present appeal were not preserved in the superior court. Rather, these claims of error are a result of Hurd's post-sentencing change of attorney and change of litigation strategy. This being so, then even if Hurd's challenges to the third-degree assault verdict were not barred by the prohibition on claim splitting, Hurd would have to show plain error.

Hurd has not shown plain error. The record demonstrates that Hurd's previous attorney made a conscious decision not to object to the State's request for entry of judgement on the third-degree assault charge. Hurd's previous attorney had ample opportunity to object: at both the June status conference and the August sentencing hearing, Judge Pengilly explicitly asked Hurd's attorney to state his position on this issue. Both times, the attorney declared that the superior court should proceed to convict Hurd of third-degree assault and sentence him for this crime.

Indeed, at the sentencing hearing, when it appeared that Hurd had a valid procedural objection to the late-announced aggravating factor of "most serious conduct", Hurd's attorney told Judge Pengilly that he wished to waive any procedural objection to the court's consideration of this sentencing factor "because we want to get sentenced".

To establish plain error, the party claiming error must establish that their attorney had no tactical reason to refrain from objecting.[36] Here, the record of the remand proceedings in the superior court indicates that Hurd and his attorney consciously desired to bring Hurd's case to a close as

**36.** *See Jackson v. American Equity Ins. Co.,* 90 P.3d 136, 144 (Alaska 2004); *Henry v. State,* 861 P.2d 582, 589 (Alaska App.1993); *Massey v. State,* 771 P.2d 448, 453 (Alaska App.1989); *Potts v. State,* 712 P.2d 385, 394 n. 11 (Alaska App.1985).

quickly as possible, by having Judge Pengilly enter judgement and impose sentence for third-degree assault.

We additionally note that, had Hurd actively opposed the entry of judgement on the third-degree assault charge—if he had claimed a right to a new trial on the assault charge—he would have run the risk that the State would re-evaluate its decision not to pursue the kidnapping charge. That is, if Hurd had convinced the superior court that a re-trial was required, even for the assault charge, the district attorney's office might have decided that if a second trial had to be held, it might as well include the kidnapping charge.

For these reasons, Hurd has failed to establish that his previous attorney had no tactical reason for refraining from raising potential attacks on the jury's verdict.

Hurd now has a new attorney, and Hurd and his new attorney apparently believe that his case should have been handled differently in the superior court. But absent clear proof of incompetence on the part of Hurd's previous attorney (and the record contains no such proof), Hurd can not establish plain error by pointing out that he might have chosen to object to the superior court's entry of judgement on the third-degree assault charge, or that he might have raised attacks on the evidence or the procedures underlying the jury's verdict on that charge.

### Conclusion of Part C

We have discussed the legal prohibition on claim splitting among different appeals in the same case. We have also discussed Hurd's apparent tactical reasons for failing to object to the entry of judgement on the third-degree assault charge when his case was remanded to the superior court. For both of these reasons, we conclude that Hurd can not now attack the evidentiary basis of the jury's third-degree assault verdict, or attack the jury instructions relating to that charge, or attack Judge Pengilly's evidentiary rulings at Hurd's trial.

### Part D

Hurd's argument that the double jeopardy clause prohibited the superior court from sentencing him to suspended jail time and placing him on probation, and Hurd's attack on the severity of his overall sentence

*Did the superior court violate the constitutional guarantee against double jeopardy by imposing a sentence for third-degree assault that included suspended imprisonment and an accompanying term of probation, when Hurd's original kidnapping sentence contained no suspended portion, and thus no component of probation?*

 When Hurd was originally sentenced—*i.e.*, when he was sentenced for the offenses of coercion and kidnapping—Judge Pengilly imposed a 7–year sentence (all to serve) for the kidnapping and a concurrent 1–year sentence for the coercion.

Following our reversal of Hurd's kidnapping conviction, Judge Pengilly entered judgement against Hurd for third-degree assault and sentenced him to 5 years' imprisonment, with all of this 5–year term suspended except for the 23 months that Hurd had already served in jail. (Judge Pengilly again declared that Hurd's 1–year sentence for coercion would be concurrent.)

Hurd argues that his new sentence is more severe than his original sentence, and that the new sentence therefore violates the double jeopardy clause of the Constitution. At first blush, Hurd's claim seems peculiar. One would think that Hurd's current composite sentence of 5 years with all but 23 months suspended (*i.e.*, only 23 months to serve) is *less* severe than his original composite sentence of 7 years to serve. But Hurd argues that his current sentence is in fact more severe than his original sentence because he now faces a term of probation when, before, he did not.

Hurd's argument overlooks the fact that, as a matter of law, a sentencing judge who suspends any portion of a defendant's sentence *must* place the defendant on probation. *See* AS 12.55.080; *Figueroa v. State*, 689 P.2d 512, 514 (Alaska App.1984). That is, when a defendant receives a sentence of im-

prisonment that is suspended in whole or part, probation is not discretionary but rather is mandatory.

Because probation is mandatory when any portion of a defendant's sentence is suspended, acceptance of Hurd's argument would lead to the strange result that, after a sentencing judge imposed a sentence of "straight time" (i.e., a sentence requiring the defendant to serve an entire specified term of imprisonment), the judge would be constitutionally barred from reconsidering the defendant's sentence and suspending a portion of the previously imposed term of imprisonment, unless the defendant specifically waived the guarantee against double jeopardy.

But we need not definitely resolve that issue in Hurd's case. All that we need decide is whether time spent on probation is a lesser sentence, for constitutional purposes, than time spent in prison.

Hurd originally received a composite sentence of 7 years' imprisonment, all to serve. Under Alaska's corrections laws, Hurd was eligible to accumulate "good time" credit equal to one-third of this sentence (approximately 28 months).[37] Thus, theoretically (i.e., if Hurd did not forfeit any good time credit because of misbehavior in prison[38]), Hurd could have been released from prison after serving only two-thirds of his 7–year sentence.[39] However, Hurd would have been on mandatory parole (i.e., supervised release) during this final third of his sentence.[40] Thus, under the terms of Hurd's original sentence, he would have remained under state supervision—either in prison or on mandatory parole—for a total of 7 years.

But when Hurd was sentenced the second time, Judge Pengilly sentenced him to time served (23 months), followed by 3 years of probation. Thus, under the terms of his current sentence, Hurd faces only 5 years (actually, 59 months) of state supervision—2 years less supervision than he faced under his original sentence.

Hurd's only potential complaint is that his 3 years (36 months) of supervised release under the current sentence is somewhat longer than the 28 months that he would have spent on mandatory parole under his original sentence (if he had successfully held onto his full 28–month complement of good time credit). Thus, the real issue in Hurd's case is whether, for double jeopardy purposes, 8 months spent on probation is a more severe sentence than the same 8 months spent in prison. The answer, we believe, is self-evident.

We therefore reject Hurd's contention that his current sentence is harsher than his original sentence.

■ We also note that it was Hurd's choice whether to accept a partially suspended sentence and the accompanying term of probation, or to insist on a sentence consisting wholly of time to serve. Alaska law allows a defendant to refuse probation and, instead, demand imposition of a sentence that entails solely time to serve. As we explained in State v. Auliye, "probation is a contract, and because this contract allows a judge to control a defendant's life in ways that the defendant may deem more burdensome than normal criminal penalties, a defendant is free to refuse probation and to insist on a normal sentence."[41]

Thus, Hurd's current sentence of suspended jail time and probation is premised on Hurd's choice to accept probation rather than insisting that the superior court sentence him to a wholly unsuspended term of imprisonment.

*Hurd's claim that his sentence for third-degree assault exceeds the "Austin" ceiling codified in AS 12.55.125(k)(2)*

■ Hurd argues (based on Judge Pengilly's comment at the second sentencing

---

37. See AS 33.20.010(a).

38. See AS 33.20.050–060.

39. See AS 33.20.030.

40. See AS 33.20.040(a).

41. 57 P.3d 711, 717 (Alaska App.2002), citing *Brown v. State,* 559 P.2d 107, 111 n. 13 (Alaska 1977); *Bland v. State,* 846 P.2d 815, 818 (Alaska App.1993); *Alfred v. State,* 758 P.2d 130, 131 (Alaska App.1988).

hearing that Hurd's 23 months to serve exceeded the *Austin* ceiling) that he unlawfully received a more severe sentence than a second felony offender convicted of the same offense (*i.e.*, third-degree assault). The State takes issue with this analysis.

Under the legislature's codification of the *Austin* rule, AS 12.55.125(k)(2), a first felony offender convicted of a class C felony (such as third-degree assault) can not receive a sentence of unsuspended imprisonment exceeding the 2–year presumptive term that would apply to a second felony offender convicted of the same offense unless the sentencing judge finds one or more aggravating factors under AS 12.55.155(c) or extraordinary circumstances as defined in AS 12.55.165. Hurd received a sentence of 23 months to serve—one month less than the 2–year presumptive term for second felony offenders.

Judge Pengilly apparently believed that Hurd's sentence should be deemed to exceed the *Austin* ceiling because, typically, a defendant sentenced to serve 2 years' imprisonment would be entitled to 8 months of good time credit and therefore would actually serve only 16 months in prison. Judge Pengilly's analysis is plausible, but this an open question under Alaska law. There are no cases on this topic. Thus, Judge Pengilly's *Austin* analysis of Hurd's sentence is only arguable.

This is fatal to Hurd's claim in this appeal. Both at the June 12th status conference and, later, at the August 13th sentencing hearing, Hurd's attorney actively urged Judge Pengilly to sentence Hurd to time served—*i.e.*, 23 months to serve. Thus, if Hurd is to prevail in his argument that 23 months to serve exceeded the *Austin* ceiling, he must show plain error. But to show plain error, Hurd must show that any competent judge or attorney would have recognized that his sentence exceeded the *Austin* ceiling. As we explained in the last paragraph, Hurd's posi-

tion is only arguable. Thus, there was no plain error.[42]

Moreover, even if we assume for purposes of argument that Hurd's sentence did exceed the normal *Austin* ceiling, Judge Pengilly found aggravator AS 12.55.155(c)(10)—that is, he found that Hurd's conduct was among the most serious in the definition of third-degree assault.

Hurd argues that Judge Pengilly could not lawfully rely on this aggravating factor because Hurd had no notice of this proposed factor in advance of the sentencing hearing. But, as we explained earlier in this opinion, Hurd's attorney raised this lack-of-notice problem at the sentencing hearing. When he did so, Judge Pengilly offered the defense attorney a continuance, and the defense attorney refused. The defense attorney declared that Hurd "definitely" did not want a continuance; he told Judge Pengilly that if Hurd had a procedural defense to the judge's consideration of the aggravating factor, they were going to waive that defense "because we want to get sentenced [today]."

In *Collins v. State*, 816 P.2d 1383 (Alaska App.1991), we addressed situations like Hurd's case—*i.e.*, situations in which an aggravating factor is proposed at the eleventh hour, without adequate pre-sentencing notice to the defendant. We declared that, in all future cases, "we [would] strictly enforce the contemporaneous objection rule: absent plain error, a defendant will not be heard to complain on appeal that he or she lacked advance notice of aggravating factors unless the issue has been preserved by a timely objection in the trial court."[43]

Given the fact that Hurd's attorney expressly waived any objection to the lack of advance notice, and given our decision in *Collins*, Hurd can not now challenge Judge Pengilly's finding of aggravator (c)(10).

*Hurd's claim that his composite sentence is excessive*

██ Finally, Hurd argues that even if Judge Pengilly could properly consider ag-

**42.** *See, e.g., Baker v. State*, 22 P.3d 493, 503 (Alaska App.2001): "In the end, Baker has shown only that this issue might be debatable. But this means that he has failed to show plain error—for if competent judges could differ on the

correct resolution of a legal issue, there is no plain error."

**43.** *Collins*, 816 P.2d at 1385.

gravating factor (c)(10), the judge gave too much weight to this factor, and he gave Hurd an excessive sentence for third-degree assault.

As we explained above, because Hurd was sentenced for two crimes arising from the same episode, we do not consider Hurd's sentence for third-degree assault in isolation. Rather, we assess whether Hurd's composite sentence for coercion and third-degree assault—a total of 5 years' imprisonment, with all but 23 months suspended—is excessive.

Hurd's conduct was summarized early in this opinion. Given the totality of that conduct, and given Judge Pengilly's express finding that Hurd was factually guilty of kidnapping, we conclude that Hurd's sentence is not clearly mistaken.[44]

### Conclusion

The judgement of the superior court is AFFIRMED.

**44.** *See McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974) (holding that an appellate court is to affirm a sentencing court's decision unless the sentence is clearly mistaken).